[No. 51138–1.   En Banc.   October 31, 1985.]

LARRY D. DEAN, *Respondent,* v. THE MUNICIPALITY
OF METROPOLITAN SEATTLE, *Appellant.*

*Preston, Thorgrimson, Ellis & Holman,* by *Michael E. Cavanaugh,* for appellant.

*Halverson & Strong, Sidney J. Strong,* and *Abraham A. Arditi,* for respondent.

CALLOW, J.—This case is before us on direct review from a jury verdict awarding the plaintiff Larry Dean $80,000 on his complaint. The defendant Municipality of Metropolitan Seattle (Metro) appeals raising as issues (1) the extent of the duty of an employer to accommodate a worker who becomes handicapped while employed; (2) the burden on a handicapped worker of showing his qualifications for available jobs to establish a prima facie case of discrimination; and (3) whether a plaintiff must prove that a defendant employer intentionally engaged in outrageous and extreme conduct in order to recover damages for emotional distress and mental anguish. We affirm.

Dean was a bus driver for Metro until April 1979 when he lost the sight of his right eye due to disease. He remained an employee by first using up his sick leave and disability and then taking leave without pay. He resigned in December 1979 in order to obtain his retirement money and later filed suit claiming that Metro had failed to accommodate his disability.

At the time of trial, Dean was 31 years old. The evidence showed that he had graduated from high school with an emphasis on business. He graduated from junior college with a degree in physical education. While in junior college he had been employed in construction work, brick laying, cement masonry, demolition, and custodial and janitorial work. He also had had experience in furniture repair, machine repair, electrical work and had operated machines

for a company manufacturing truck interiors. He also had repaired cars and overhauled automobile engines and transmissions.

After junior college, Dean majored in law enforcement at Portland State University. He left Portland State one and a half quarters short of receiving his bachelor's degree for a short–lived professional football career. Thereafter he became a correctional officer at the Washington State Reformatory.

In June 1976, he was hired by the Bellevue Police Department as a patrol officer. He then graduated from the Seattle Police Academy and was commissioned. He resigned from the Bellevue Police Department in December 1976.

Dean started working for Metro in May 1977, satisfied a probationary period and became a full–time bus driver. In the summer of 1978 he contracted a disease known as sarcoidosis. This particularly affected his right eye and by April 1979 he was almost blind in that eye. His physician, Dr. Stapleton, told him that he should no longer drive a bus and wrote to Dean's supervisor including, in part, the diagnosis "[S]arcoidosis with neuritis and severe vision loss in right eye". The doctor determined that he was physically able to perform other jobs and could drive an automobile.

Dean took Dr. Stapleton's note to his immediate supervisor and asked about his options. According to Dean's testimony he was willing to accept lower paying jobs. Dean's immediate supervisor erroneously told Dean that he could not apply for the position of equipment service operator because his eye condition prevented him from being a bus driver and only active bus drivers could apply for the equipment service operator position. As a result neither the immediate supervisor nor anyone else at Metro told Dean of a May 1979 equipment service operator opening, a position for which Metro concedes Dean's qualifications. Dean testified he would have accepted the position had it been offered.

The equipment service operator position was a key one,

since prior experience in that position was a qualification requirement for the positions of equipment service operator hostler and lead equipment service operator supervisor, two positions which had openings during the period Dean was seeking another position and which were of interest to Dean. Metro agreed that the qualification would have been satisfied and Dean would otherwise have met minimum qualifications for these positions had he been advised of the opening for the equipment service operator position in May 1979.

Dean's immediate boss referred him to an equal employment officer, who was instructed by the personnel manager to assist Dean in finding other employment with Metro. At Dean's request, the equal employment officer met with him on two occasions. The equal employment officer claimed Dean never gave him an updated medical report as requested nor information beyond that in his resume about his prior work experience and skills. The equal employment officer conceded that he did not seek out medical information already on file with Metro, he did not speak with Dean's doctor, and did not look at Dean's personnel file until he was preparing for trial.

There is evidence that Dean applied for, or was qualified for, several Metro positions, but was not interviewed for them. Metro sent him form rejection letters giving standard, nonindividualized reasons for the rejections. The equal employment officer acknowledged that he did not discuss many of the job openings with Dean and further acknowledged that Dean would probably have qualified for several of them, including custodian, general laborer, office service worker, and, if Dean had had previous experience as an equipment service operator, for equipment service operator hostler and lead equipment service operator supervisor.

The opening for a "transit police officer" received a great deal of attention during the trial. The record reflects that Dean was unaware of the position until after he left Metro. Primarily the transit police officer was responsible for riding on selected Metro buses to provide security. When the

equal employment officer spoke to his supervisor about transit police officer as a possible position for Dean, the supervisor rejected the suggestion saying Metro's practice was to use Seattle police officers for the position. The director of personnel from the Seattle Police Department testified there was no legal reason why Dean could not have been given a special police commission to perform the duties of a transit police officer.

In December, after exhausting his leave and other resources, Dean resigned in order to obtain his retirement money. He went to California, but returned in March 1980. Shortly thereafter he met with the equal employment officer. Dean testified that the equal employment officer told him Metro had no policy regarding handicapped accommodation unless it involved an on–the–job injury and that he would have to apply like everyone else. Dean then applied for three Metro jobs, including equipment service operator. Metro sent him a form rejection letter stating that he was unqualified for the position. Dean met with the equal employment officer one further time in October 1980. When nothing came of that meeting, this litigation resulted.

Metro does not contest that Dean is handicapped, but does contest his claim that it failed in its duty to accommodate him as required under RCW 49.60 and WAC 162–22. Metro assigns error to the trial court's refusal to dismiss the case and to its refusal to give the proposed jury instructions which would have informed the jury that (a) an employer need not create jobs for handicapped workers; (b) an employer need not give priority to handicapped workers over more qualified workers; and (c) a plaintiff must prove that the defendant intentionally engaged in outrageous and extreme conduct resulting in severe emotional distress in order to recover damages for emotional distress.

The issues include whether the trial court erred when it refused to dismiss Dean's case for failure to make a prima facie case of handicapped discrimination and whether the trial court erred by refusing to give Metro's proffered instructions.

I

## METRO'S DUTY TO ACCOMMODATE

### A. Reasonable Accommodation

■ An employer has an obligation to reasonably accommodate a handicapped employee. *Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978); RCW 49.60.180(1); WAC 162–22–080. Failure to reasonably accommodate a handicapped employee constitutes discrimination under RCW 49.60.180.

> [A]ppellant was required by the terms of RCW 49.60 to make *reasonable accommodation* for handicapped employees. . . .
>
> . . .
>
> RCW 49.60.180 is part of a comprehensive law by which the legislature declared it is an individual's civil right to be free from various types of discrimination . . . [a]nd the legislature has directed liberal construction of the provisions of RCW 49.60 in order to accomplish its purpose. . . .
>
> . . .
>
> . . . When, in 1973, the legislature chose to make this policy applicable to discrimination against the handicapped, we believe it is clear it mandated positive steps to be taken. An interpretation to the contrary would not work to eliminate discrimination. It would instead maintain the *status quo* wherein work environments and job functions are constructed in such a way that handicaps are often intensified because some employees are not physically identical to the "ideal employee".

(Some italics omitted.) *Holland v. Boeing Co.*, 90 Wn.2d at 387–89. In the *Holland* case, an employer chose to transfer a handicapped employee from a job he could perform well to another position which he was unable to acceptably perform due to his handicap. The opinion found that Boeing had failed to exercise several options it had available to accommodate Holland. *Holland*, 90 Wn.2d at 391. The court found further support for its requirement of definitive relief in WAC 162–22–080.

The Washington Human Rights Commission has promulgated WAC 162–22–080(3) which offers guidance to

employers in fulfilling their obligations to handicapped employees. It reads:

> The cost of accommodating an able handicapped worker will be considered to be an undue hardship on the conduct of the employer's business only if it is unreasonably high in view of the size of the employer's business, the value of the employee's work, whether the cost can be included in planned remodeling or maintenance, the requirements of other laws and contracts, and other appropriate considerations.

Metro does not challenge this regulation.

The approach of the Oregon legislature to this problem gives some perspective to the duty imposed on the employer. In *Montgomery Ward & Co. v. Bureau of Labor,* 280 Or. 163, 570 P.2d 76 (1977), we find:

> It is our conclusion that the legislature intended by the statutory language to impose upon an employer the obligation not to reject a prospective employee because of a physical or mental handicap unless there is, because of the defect, a probability either that the employee cannot do the job in a satisfactory manner or that he can do so only at the risk of incapacitating himself. The "fullest possible participation in the * * * economic life of the state" and the "reasonable demands of the position" would seem to require no less a standard.

*Montgomery Ward,* 280 Or. at 168–69, quoting from Or. Rev. Stat. § 659.40. *See also Montgomery Ward & Co. v. Bureau of Labor,* 42 Or. App. 159, 600 P.2d 452 (1979).

### B. Failure To Give Requested Jury Instructions

Metro argues that the trial court's failure to give its proposed jury instructions misled the jury as to Metro's duty to reasonably accommodate Dean. Metro proposed the following jury instructions:

> An employer is not required to create a position to accommodate a handicapped worker.
>
> An employer is not required under the law to give preference to a handicapped worker over someone who is more qualified.

Metro contends that the court's failure to give these instructions permitted the jury to conclude that Metro had an obligation to create a job for Dean or that Metro's duty to reasonably accommodate required the hiring of a less qualified handicapped employee over a more qualified handicapped employee. We agree that Metro had no duty to create a job for Dean or to hire him in preference to a more qualified employee. We do not agree that the failure to give the proposed instructions constituted error.

■ Jury instructions must be considered in their entirety. They are sufficient if they permit each party to argue his theory of the case, are not misleading, and when read as a whole, properly inform the jury of the applicable law. *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 194, 668 P.2d 571 (1983).

The instructions to the jury explained the provisions of the laws against discriminating against the handicapped and their applicability to Metro. An instruction stated:

> You are instructed that the Municipality of Metropolitan Seattle is an employer subject to the provisions of the Washington State Law Against Discrimination.
>
> Supervisors, managers and other employees acting in the interest of the Municipality of Metropolitan Seattle are agents of defendant and, therefore, an act or omission of these agents is an act or omission of the Municipality of Metropolitan Seattle.
>
> The defendant as a metropolitan municipal corporation, is required by law to operate a personnel system based solely on merit and fitness. The law requires that defendant make reasonable accommodation to handicapped employees.

Based on that instruction, Metro was able to argue that it was not required to hire a less qualified handicapped employee over a more qualified employee.

Another instruction summarized Dean's claim against Metro and Metro's answer to the charge of discrimination as follows:

> The plaintiff claims that the defendant discriminated against him in employment in violation of the State law

against discrimination by not accommodating his handicap, in one or more of the following respects:

    (a) It failed or refused to process job applications or to notify plaintiff of job openings, which the plaintiff was qualified to fill;

    (b) It hired others for jobs, which plaintiff was qualified to fill; and

    (c) It forced plaintiff to terminate his employment by failing or refusing to provide him with any job alternatives.

The defendant answers that defendant did not discriminate against plaintiff because of his handicap. Defendant claims, instead:

    (a) The plaintiff rejected the only jobs he was qualified to fill;

    (b) The plaintiff was not qualified for other job openings of the defendant;

    (c) The plaintiff voluntarily terminated his employment with defendant;

    (d) The plaintiff failed to disclose information which defendant needed to evaluate plaintiff's qualifications.

The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues.

A further instruction set forth Metro's duty to reasonably accommodate a handicapped worker and the factors to be considered when evaluating whether an accommodation would create an undue hardship on an employer, stating:

State law requires employers to make reasonable accommodation to the known sensory, physical and mental limitations of an otherwise qualified handicapped applicant or employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

State law provides that accommodating an able handicapped worker will be considered to be an undue hardship on the conduct of the employer's business if it is unreasonable in view of the size of the employer's business, the type of the employer's business including the

composition and structure of the employer's work force, the value of the employee's work, the nature and cost of the accommodation needed, the requirements of other laws and contracts and other appropriate considerations.

Metro did not take exception to these instructions. They permitted Metro to argue that it had no obligation to create a new job for Dean.

Dean never claimed that Metro had a duty to create a new job for him. It was his position that Metro failed to accommodate him by refusing to notify him of or consider him for jobs for which he was qualified. Evidence was introduced at the trial of job openings for which Dean met the qualifications. The jury could have decided on the basis of that evidence that Metro failed to accommodate Dean without believing either that Metro should have created a new job for him or hired him over a more qualified employee. There was substantial testimony to support the positions of both the employer and the employee and, consequently, the verdict of the jury.

### C. Prima Facie Case of Handicapped Discrimination

Metro asserts that the trial court should have dismissed the action, claiming that Dean failed to make a prima facie case that he had been discriminated against. *Glasgow v. Georgia Pac. Corp.*, 103 Wn.2d 401, 693 P.2d 708 (1985) stated that federal law may be considered instructive with regard to the interpretation of our state discrimination laws. Metro asks that we apply the 4–part test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) to hold that Dean had not presented a prima facie case.

*McDonnell Douglas* involved rejection of employment of a black worker who had protested his discharge as racially motivated. He challenged the company's failure to rehire him under Title 7 of the Civil Rights Act of 1974. The opinion held that for the claimant to make a prima facie showing of race discrimination in a failure to hire case he

had to show (a) qualification for the job the employer was seeking to fill; (b) rejection despite qualifications; (c) that the position remained open; and (d) that the employer continued to seek applicants with plaintiff's qualifications. *McDonnell Douglas Corp. v. Green, supra* at 802.

*McDonnell Douglas* allocates the burden of proof as follows: (1) the worker must make a prima facie case by a preponderance of the evidence; (2) the burden is then upon the employer to produce a legitimate nondiscriminatory reason for the challenged act; and (c) the burden then is upon the worker to show that the employer's claimed reasons are pretext. *McDonnell Douglas Corp. v. Green, supra* at 802–04. *Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), continuing to apply the test, recognized that factors may vary depending on the individual case. The opinion states in part:

> We have stated consistently that the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. . . .
>
> . . .
> . . . When the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions.

*Burdine,* at 257, 260.

 The situation before us involves not a failure to hire, however, but a failure to reasonably accommodate a handicap which developed while in the employ of the employer. It was the duty of Metro to reasonably accommodate Dean by informing him of job openings for which he might be qualified. It was correspondingly the duty of Dean to cooperate with the employer in the hunt for other suitable work by making the employer aware of his qualifications, by

applying for all jobs which might fit his abilities and by accepting reasonably compensatory work he could perform. As observed in *Stieler v. Spokane Sch. Dist. 81,* 88 Wn.2d 68, 558 P.2d 198 (1977), at page 74:

There is no civil rights violation in denying a job to a person who is not qualified to perform it. Since the respondent has not shown that she was qualified to fill any of the positions in the new administration, her claim that she was a victim of . . . discrimination is without merit.

*See also Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir. 1975); *Laws v. Commonwealth,* 50 Pa. Commw. 424, 412 A.2d 1381 (1980); Comment, *Relative Qualifications and the Prima Facie Case in Title VII Litigation,* 82 Colum. L. Rev. 553 (1982).

When the Legislature passed RCW 49.60 it included the following:

49.60.020 Construction of chapter—Election of other remedies. The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof.

In keeping with this provision, and to promote the statute's recognition that the right to be free from discrimination because of physical handicap is a civil right which includes the right to hold employment without discrimination, we hold that Dean needed only to prove, as one alternative, that he was qualified for available positions for which he applied. *See Brown v. General Motors Corp.,* 601 F.2d 956 (8th Cir. 1979). Metro could in its turn prove he was less qualified than those hired to fill those existing vacancies. *Maine Human Rights Comm'n v. Canadian Pac. Ltd.,* 458 A.2d 1225 (Me. 1983). Dean was able to produce proof of application for five positions. The trial court admitted evidence regarding other jobs for which Dean was qualified and had applied, but could not prove that he had done so.

Discrimination against the handicapped differs from discrimination on the basis of race, age, creed or sex in that

the statute requires that the employer affirmatively assist the employee who becomes handicapped on the job. *Holland v. Boeing Co.*, 90 Wn.2d at 389. "It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the sensory, mental, or physical limitations of employees, unless the employer can demonstrate . . . an undue hardship on the conduct of the employer's business." WAC 162-22-080(1).

Metro failed to make reasonable accommodations to Dean's handicap when he informed it of his illness in that Metro treated him as any other job applicant, did not determine the extent of his disability, did not call him into the office to assist him in applying for other positions but left the initiative to him. He received no special attention from the personnel office when he tried to find another position within Metro. In addition, Metro acknowledged having job openings that Dean could not have discovered on his own. Metro personnel made themselves available to Dean but took no affirmative steps to help him find another position. This was required of them as "reasonable accommodation".

In order to make a prima facie case of handicap discrimination, Dean was required to prove that he had the qualifications for positions which Metro was seeking to fill and that Metro did not take appropriate affirmative steps to help him find an alternative position within the company. The evidence supports the jury's verdict that Dean carried his burden of persuasion and that Metro did not convince them that it had discharged its responsibility.

We hold that to make a prima facie case of handicap discrimination an employee plaintiff must prove that he or she is handicapped, that he or she had the qualification required to fill vacant positions and that the employer failed to take affirmative measures to make known such job opportunities to the employee and to determine whether the employee was in fact qualified for those positions.

II
DAMAGES FOR EMOTIONAL DISTRESS
UNDER RCW 49.60

Metro proposed the following instruction which sets out a tort standard for recovery of damages for emotional distress.

> To recover for mental anguish and emotional distress, plaintiff must prove that defendant intentionally engaged in outrageous and extreme conduct which resulted in severe emotional distress to plaintiff.

The measure of damages for emotional distress has been based primarily on the intentional infliction of emotional distress giving rise to the tort of outrage. *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 341 P.2d 859 (1959); *Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 565 P.2d 1173 (1977). Neither of those cases arose under RCW 49.60.

■ RCW 49.60.030(2) provides for recovery of "actual damages sustained by him . . ." In *Glasgow v. Georgia Pac. Corp.*, 103 Wn.2d at 407, damages for emotional distress under RCW 49.60 were upheld, the court stating:

> [P]laintiffs have proved the requisite elements necessary to establish their claim of sexual discrimination. Accordingly, the plaintiffs were entitled to recover damages for physical, emotional and mental suffering as they did.

*See also Holland v. Boeing Co.*, 90 Wn.2d at 393.

*Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 573 P.2d 389 (1978) had held that a person could recover damages for mental anguish under RCW 49.60. The decision noted that such recovery is distinguishable from common law recovery for emotional distress based on intentional discrimination or intentional tort because it is created by statute. *Spokane Mortgage*, at 57. The opinion recognized that the term "actual damages" included humiliation, mental anguish and suffering. *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir. 1981) affirmed emotional distress damages under RCW 49.60 in an action for age discrimination. There too the trial court refused an instruction requiring outrageous and extreme conduct. *Kelly*, 640 F.2d

at 984 n.16.

Under RCW 49.60, proof of discrimination results in a finding of liability. The plaintiff, once having proved discrimination, is only required to offer proof of actual anguish or emotional distress in order to have those damages included in recoverable costs pursuant to RCW 49.60. The damages result from the injury, the discrimination. *Andersen v. Exxon Co., U.S.A.,* 89 N.J. 483, 446 A.2d 486 (1982); *State Div. of Human Rights v. Great Atl. & Pac. Tea Co.,* 46 A.D.2d 1001, 362 N.Y.S.2d 105 (1974); *121–129 Broadway Realty, Inc. v. State Div. of Human Rights,* 49 A.D.2d 422, 376 N.Y.S.2d 17 (1975).

Dean testified that while pursuing another position within Metro he exhausted his financial resources. He was forced to sell furniture, clothing and jewelry to live. He moved to California and stayed with his mother. He borrowed money from his family and was forced to go on medical assistance. There was sufficient evidence introduced to warrant an instruction on emotional distress damages. The jury, after weighing the evidence, could have found that Dean suffered mental anguish as a result of the discrimination. However, since neither party requested a special verdict, it is impossible to determine the precise amount or indeed whether the jury awarded anything for mental anguish. Plaintiff, once having proved discrimination pursuant to RCW 49.60, need not prove outrageous and extreme conduct or severe emotional distress. The court instructed the jury, in part, as follows:

> If you find the plaintiff was discriminated against in his employment based on his physical handicap, you may award actual damages for the following:
> (1) Past, present and future emotional distress, mental anguish and humiliation;
> (2) The reasonable value of earnings lost with interest; and
> (3) Reimbursement for the reasonable value of lost fringe benefits.
> The burden of proving damages rests with the plaintiff and it is for you to determine whether any particular

element has been proved by a preponderance of the evidence. Your award must be based upon evidence and not upon speculation, guess or conjecture.

We hold that an instruction to the jury to consider emotional distress or mental anguish when determining actual damages sustained by the plaintiff is proper in a suit brought under RCW 49.60.

The trial court is affirmed. The cause is remanded for a determination of reasonable attorney fees.

DOLLIVER, C.J., and DORE, PEARSON, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J. (concurring)—I concur in the result solely upon the basis that Metro did not except to the instruction that accommodation of a handicapped worker is an undue hardship if it is unreasonable in view of the size of the employer's business.

WAC 162–22–080(3) provides:

The cost of accommodating an able handicapped worker will be considered to be an undue hardship on the conduct of the employer's business only if it is unreasonably high in view of the size of the employer's business . . .

That standard may well be a valid and desirable criteria for determining the necessity of an employer's accommodation. However, it is not authorized by the statute, RCW 49.60.120(3) and .180(3).

The regulation is beyond the authority granted the Commission. Its authority, RCW 49.60.110, is to adopt regulations to carry out the provisions of RCW 49.60. Nowhere is there a hint that the size of the employer's business is a relevant factor in determining whether there has been discrimination against a handicapped person. Such a criterion should be set by the Legislature, not the Commission.

UTTER and ANDERSEN, JJ., concur with BRACHTENBACH, J.