[No. 12062-7-III.   Division Three.   March 11, 1993.]

DEBRA CURTIS, *Respondent,* v. SECURITY BANK
OF WASHINGTON, *Appellant.*

*William T. Grimm, John M. Payne,* and *Davis, Grimm & Payne,* for appellant.

*Harry E. Ries* and *Larson, Tracy & Ries, P.S.,* for respondent.

SWEENEY, J. — Security Bank of Washington, now known as Columbia Bank, appeals a trial court judgment in favor of Debra Curtis. Security Bank contends the court erred in making certain findings and in concluding that Security Bank had discriminated against Ms. Curtis because of her handicap. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Security Bank of Washington (Bank) operates seven branches in Central Washington. In 1976, Debra Curtis began working for the Bank in Moses Lake. While employed there, she held positions of statement clerk, proof operator, teller, and loan documentation clerk.

In late 1983 or early 1984, Ms. Curtis developed an arthritic condition in her hips. In 1985, Dr. Meredith Heick sent the Bank two letters regarding Ms. Curtis' condition. Between 1985 and 1988, the Bank was aware of Ms. Curtis' handicap and accommodated her condition by providing a space heater, taking draft prevention measures, permitting

time off from work for medical appointments, and granting a 3-week leave of absence for bed rest.

In the spring of 1988, the Bank requested that Ms. Curtis be trained as a teller. Ms. Curtis provided another letter from Dr. Heick explaining that Ms. Curtis could not tolerate prolonged standing. Ms. Curtis was not required to perform the teller work. In June and July of 1988, the Bank decided to reorganize; the reorganization would result in the elimination of Ms. Curtis' position. She was aware her position would be eliminated but was uncertain when, or what future duties might be required. The Bank knew that her future duties might involve part-time teller work.

During the fall of 1988, two positions became available — operations supervisor and customer service representative (CSR). Both positions were posted and Ms. Curtis was aware of the vacancies. She did not apply for either position and both were filled by other employees.

On December 7, 1988, the Bank offered Ms. Curtis a position which required part-time CSR and teller duties. Ms. Curtis maintained she could not perform the teller duties because of the standing required. Rather than accept the position, Ms. Curtis requested that she be laid off and receive a severance package. On March 31, 1989, she was laid off after 13 years of employment. Ms. Curtis unsuccessfully attempted to find other employment. In January 1992, Ms. Curtis was to begin a 2-year retraining program approved by the Division of Vocational Rehabilitation, after which she expects to be fully employed.

Ms. Curtis brought suit against the Bank for wrongful discharge and violation of RCW 49.60.010[1] and for inten-

---

[1]RCW 49.60.010 provides:

"This chapter shall be known as the 'law against discrimination'. It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap are a matter of state concern, that such discrimination threatens not only the rights and proper

tional infliction of emotional distress. The court concluded that the Bank had discriminated against Ms. Curtis by failing to reasonably accommodate her handicap in violation of RCW 49.60.180 for the period from June to December of 1988. The court awarded judgment in the amount of $49,627 in past wages and benefits plus prejudgment interest, $49,156 for future lost wages and benefits, $12,000 for emotional distress, and attorney fees and costs. The Bank appeals. Ms. Curtis requests attorney fees on appeal.

## STANDARD OF REVIEW

██ The Bank contends the court erred in making certain findings and in concluding that the Bank had discriminated against Ms. Curtis because of her handicap. A trial court's findings of fact and conclusions of law are reviewed to determine whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the court's conclusions. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978). Substantial evidence exists if it is sufficient to persuade a fair-minded person of the truth of a matter. *Holland*, at 390-91.

## HANDICAP DISCRIMINATION

Discrimination on the basis of any sensory, mental, or physical handicap is prohibited. RCW 49.60.010. Liberal construction of RCW 49.60.010 is mandated to accomplish the purpose of eliminating and preventing discrimination. RCW 49.60.020, .010; *Holland*, at 387-88. It is an unfair practice for an employer "[t]o discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any . . . handicap". RCW 49.60.180(3).

---

privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. A state agency is herein created with powers with respect to elimination and prevention of discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap; and the commission established hereunder is hereby given general jurisdiction and power for such purposes."

WAC 162-22 implements RCW 49.60.180. The definition of handicap in WAC 162-22-040(1)(a) is broad; it includes any of the sensory, mental or physical conditions that are the basis for discrimination.[2] Failure to reasonably accommodate an employee's handicap is an unfair or discriminatory act. WAC 162-22-080(1).[3] Refusing to hire an able handicapped worker because it would require accommodation is also a discriminatory act. WAC 162-22-080(2).

■ The Bank first contends it had no duty to accommodate Ms. Curtis because the duty to accommodate a handicapped employee only arises after the person loses a job due to a handicap. It argues that Ms. Curtis' job was eliminated for reasons unrelated to her handicap. None of the Washington cases cited by the Bank specifically state or imply that the Bank's contention is correct. *Kimmel v. Crowley Maritime Corp.*, 23 Wn. App. 78, 596 P.2d 1069, *review denied*, 92 Wn.2d 1026 (1979), *overruled in part in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989), and *Rose v. Hanna Mining Co.*, 94 Wn.2d 307, 616 P.2d 1229 (1980) discuss denial of employment, not the failure to accommodate a current employee. *Dean v. Municipality of Metro Seattle*, 104 Wn.2d 627, 637, 708 P.2d 393 (1985); *Holland*, at 391. In *Simmerman v. U-Haul Co.*, 57 Wn. App. 682, 687, 789 P.2d 763 (1990), the employee failed to prove he was handicapped. It did not discuss failure to accommodate.

---

[2]WAC 162-22-040(1)(a) defines a condition as a " 'sensory, mental, or physical handicap' if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question, or was denied equal pay for equal work, or was discriminated against in other terms and conditions of employment, or was denied equal treatment in other areas covered by the statutes. In other words, for enforcement purposes a person will be considered to be *handicapped* by a sensory, mental, or physical condition if he or she is *discriminated against because of the condition* and the condition is abnormal."

[3]WAC 162-22-080(1) provides:
"It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the sensory, mental, or physical limitations of employees, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business."

Likewise, the Bank's reliance on *Holland* for its contention that accommodation is required only after a worker's handicap has resulted in the loss of a job is incorrect. The *Holland* court held that reassignment of an employee with cerebral palsy to a position which he could not perform due to his handicap was not reasonable accommodation and, accordingly, the transfer was discriminatory. *Holland*, at 386, 391. To rule otherwise would fail to achieve the statutory purpose of eliminating and preventing discrimination. RCW 49.60.010; *see Holland*, at 387. Moreover, it does not comport with the liberal interpretation required to achieve the statutory purpose. *Clarke v. Shoreline Sch. Dist. 412*, 106 Wn.2d 102, 120, 720 P.2d 793 (1986); *Holland*, at 387-88. The Bank had a duty to accommodate Ms. Curtis' handicap when her transfer was under consideration.

The Bank next contends that Ms. Curtis failed to make a prima facie case of handicap discrimination. The elements of handicap discrimination are (1) a handicap, (2) a qualified employee, and (3) failure of the employer to take *affirmative* measures to make known suitable job opportunities to the plaintiff and to determine whether he or she is qualified for those positions. *Dean*, at 639.

We review the facts here in the light of these elements.

1. Handicap. The Bank does not dispute the court's finding that Ms. Curtis was handicapped.

2. Qualified for Position. It does, however, take issue with the court's finding that Ms. Curtis was qualified for the positions of operations supervisor or CSR.

Ms. Curtis had been employed by the Bank for 13 years in the positions of statement clerk, proof operator, relief teller, note teller, and loan discount or loan documentation clerk. The two positions opened in the fall of 1988. An operations supervisor oversees the daily functions and operations of the bank, including the monthly audit certification, assists tellers, does performance appraisals and does backup teller work. The person chosen for the job had been with the Bank for 14 years in various teller positions, and as an escrow agent, secretary, loan clerk and personal banker.

A CSR assists customers in opening accounts, changing accounts, opening time CD's, and establishing IRA's. The CSR makes customer calls and provides emergency backup for tellers. The person chosen for the CSR position had been with the Bank 7 years as a utility clerk and teller.

Neither Ms. Curtis nor the employees chosen for the jobs had previously held either position. Those who filled the positions required training; Ms. Curtis may have required training. The Bank frequently transferred employees to different positions and provided in-house training. Ms. Curtis, like many other Bank employees, held a number of positions during her career with the Bank. On the facts before us, the need for training did not render Ms. Curtis unqualified. Otherwise, the employees chosen would have been "unqualified". Substantial evidence supports the trial court's finding that Ms. Curtis was qualified for either position.

3. Failure To Reasonably Accommodate. The primary issue before us is what constitutes reasonable accommodation of a handicapped worker, when the worker's position is eliminated and the proposed transfer is to a job the worker cannot perform due to the handicap.

The handicapped worker requires treatment different than other nonhandicapped employees if the purposes of RCW 49.60 are to be achieved. The employer must take "positive steps" to accommodate the physical limitations of handicapped employees. *Holland*, at 388-89. *Dean* is instructive. There, a bus driver was no longer able to drive because of blindness in one eye. The employer did not notify the driver of several job openings, and rejected his application for several positions for which he was qualified. *Dean*, at 630. In concluding that the employer had failed to make reasonable accommodations, the court held:

> Metro [employer] failed to make reasonable accommodations to Dean's handicap when he informed it of his illness in that Metro treated him as any other job applicant, did not determine the extent of his disability, did not call him into the office to assist him in applying for other positions but left the initiative to him. He received no special attention from the

personnel office when he tried to find another position within Metro. . . . Metro personnel made themselves available to Dean but took no *affirmative steps to help him find another position*. This was required of them as "reasonable accommodation".

(Italics ours.) *Dean*, at 639.

"[I]f a handicapped employee is qualified for a job within an employer's business, and an opening exists, the employer must take affirmative steps to help the handicapped employee fill the position." (Italics omitted.) *Clarke*, at 121 (citing *Dean*, at 639). This the Bank failed to do. It did not encourage Ms. Curtis to apply for jobs or assist her in doing so. Ms. Curtis was treated as any other employee. There is ample evidence to support the court's findings.

The Bank's argument that Ms. Curtis failed to show interest in and apply for open positions is unpersuasive. Her failure to seek the open positions can be attributed to the Bank's failure to inform her that future jobs would involve teller work. The Bank's duty to accommodate required it to inform Ms. Curtis that future jobs might involve teller work, perform capabilities testing on the open positions, encourage her to apply for the vacant positions she could perform, and affirmatively assist her in applying for those positions. *Dean*, at 637-39.

Reasonable accommodation did not require the Bank to transfer Ms. Curtis to the occupied CSR position, and it was error for the court to so find. Accommodation means taking affirmative steps to move a handicapped worker into existing vacancies, *Dean*, at 637-38, open positions, *Clarke*, at 121, or vacant positions, *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 579, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle, supra.* Ms. Curtis made out a prima facie case of discrimination.

## PREJUDGMENT INTEREST

The Bank contends the trial court erred in awarding $5,598.20 in prejudgment interest on Ms. Curtis' back wages because the cutoff date for back pay and interim earnings was too uncertain.

■ ■ A trial court's award of prejudgment interest is reviewed for abuse of discretion. *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 449, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992). RCW 49.60-.030(2) permits claimants to pursue any remedy authorized by RCW 49.60 or the United States Civil Rights Act of 1964. The Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g), authorizes the award of prejudgment interest on back pay in suits against private employers. Washington permits prejudgment interest for liquidated claims only. *Pannell*, at 448-49.

> A "liquidated" claim is a claim "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion."

*Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)).

An unliquidated claim is one:

> "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."

*Hansen*, at 473 (quoting *Prier*, at 33).

Here, the trial court found that Ms. Curtis would have maintained full-time employment at the Bank and could not find other work after being laid off. The back wages were liquidated because they could be calculated with accuracy. *Hansen*, at 472. The court was not required to determine what was reasonable. *Pannell*, at 449; *Maryhill Museum of Fine Arts v. Emil's Concrete Constr. Co.*, 50 Wn. App. 895, 903, 751 P.2d 866 (amounts are not liquidated when the court must necessarily determine what might be a reasonable amount), *review denied*, 111 Wn.2d 1009 (1988). The trial court, therefore, did not abuse its discretion in awarding prejudgment interest.

The judgment is affirmed. Ms. Curtis is entitled to attorney fees on appeal. RAP 18.1; RCW 49.60.030(2);[4] *Pannell*, at 450.

SHIELDS, C.J., and MUNSON, J., concur.

Review denied at 121 Wn.2d 1031 (1993).

---

[4]RCW 49.60.030(2) states in part:

"Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees . . .".

