

COURT OF APPEALS
STATE OF WASHINGTON

2014 FEB 18 AM 9: 40

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CYNTHIA LUSEBRINK, | ) | No. 69348-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KENT SCHOOL DISTRICT, a municipal | ) | UNPUBLISHED OPINION |
| corporation and a subdivision of the | ) | |
| State of Washington, | ) | FILED: February 18, 2014 |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BECKER, J. — Teacher Cynthia Lusebrink sued her former employer, the

Kent School District, for failing to reasonably accommodate her disability as

required by the Washington Law Against Discrimination, chapter 49.60 RCW.

We affirm the jury's verdict for the employer.

Cynthia Lusebrink has been a public school teacher for 21 years. She

was a teacher in the Kent School District from 1997 until 2008. The district has

about 1,800 teachers.

In 2004, Lusebrink took a position teaching special education students at

Kentlake High School. Her job sometimes required her to restrain students

physically, and occasionally she had to lift students in wheelchairs.

In September 2005, Lusebrink was diagnosed with a tumor on her liver.

She had surgery that resulted in 73 percent of her liver being removed. She took a leave of absence from October 2005 to February 2006. Lusebrink returned to work part time in February 2006. During that time, the district assigned her an aide to do heavy lifting while she was recuperating. Lusebrink returned to work full time in April 2006.

In January 2007, the surgical incision site was strained when Lusebrink helped to lift a student in a wheelchair onto a bus. She reported the injury and continued teaching. Test results several months later showed the incision site was severely herniated. Lusebrink had surgery on July 31, 2007, to repair the hernia. Her doctors told her not to lift anything heavy again and to take a longer recovery period because she had returned to work too soon after her first surgery.

Lusebrink was on an unpaid leave of absence for the 2007-08 school year. During this time, she applied for and received the district's long-term disability insurance benefits.

In February 2008, Larry Miner, the district's assistant superintendent of human resources, wrote Lusebrink to inquire if she was planning to return for the 2008-09 school year. After receiving this letter, Lusebrink sought assistance from teacher's union representative Mike McNett. McNett sent an e-mail to Miner stating that Lusebrink intended to return to work in fall 2008. The e-mail said it might be appropriate for Lusebrink to teach general education students upon her

return, depending on what her doctor would allow. McNett suggested to Miner in the e-mail that "it would be a good idea to get together a few months down the road during the spring or summer to discuss what jobs Ms. Lusebrink could do the following school year."[1]

In May, Lusebrink received a letter stating that her disability payments would end on May 14, 2008. She asked McNett to talk to the district and support her in seeking a change in placement and arranging for the disability benefits to continue through the summer until she had a job to return to.[2]

McNett contacted Miner and arranged a meeting, which took place on June 9, 2008. Present along with McNett, Lusebrink, and Miner were Lisa Brackin-Johnson, president of the Kent Education Association; Keith Klug, risk manager and administrator in charge of determining what accommodations the district would offer; and Kimberly Halley, the district's director of special education.

The district representatives were supportive of Lusebrink's request for help with getting her disability insurance benefits reinstated. It was agreed that a letter would be written to the insurance carrier. The discussion then turned to the topic of Lusebrink's placement for the upcoming 2008-09 school year.

Lusebrink's physician, Dr. Kimberley Herner, had written a letter in May 2008 recommending against having Lusebrink return to her occupation as a

---

[1] Report of Proceedings (July 17, 2012) at 126.
[2] Report of Proceedings (July 16, 2012) at 48.

3

special education teacher in high school because dealing with physically violent outbursts by students would potentially require Lusebrink to shift or twist in a manner that would aggravate her abdominal wall. Dr. Herner thought an acceptable option would be a sit-down job for Lusebrink where she would not be at risk for further reinjury. The district wanted to offer Lusebrink a special education position that would accommodate her sitting and lifting restrictions and where she would be interacting with students who had less serious disabilities.

McNett and Lusebrink said that option was not workable. They presented a physical therapist's letter stating that Lusebrink had the physical capabilities to teach in a mainstream classroom but she could not safely be in any special education classroom.

The district representatives asked what else Lusebrink might be interested in if not a special education position. They were aware that Lusebrink had certifications that would permit her to teach English in grades 4-12 and general education in preschool through the eighth grade. Lusebrink testified that she asked to be placed in a general education teaching position in a middle or high school. Klug, however, testified that Lusebrink said she did not want to be placed in a classroom setting. Klug testified that Lusebrink became emotional and expressed a fear of reinjury should she be placed in any classroom with students at any level because she might have to break up a fight or get bumped into in the hallway.

4

According to Klug, Lusebrink mentioned that she had been looking through the district's online job notices but had not yet noticed anything that was appropriate. Klug said he asked Lusebrink about other job classifications, such as food service, bus driving, and maintenance, and Lusebrink responded that she was not interested in such positions.

The witnesses agreed that there was discussion at the meeting of a specific position as a Teacher on Special Assignment (TOSA). Lusebrink understood that the position involved working with special needs teachers, training them, and observing students in the classroom. Lusebrink testified that she thought the TOSA position would be a "really good" position for her, and she came away from the meeting with the understanding that the district was going to place her in that position.[3] Other witnesses, however, testified that at the conclusion of the meeting, there was no consensus about Lusebrink's placement for the upcoming school year, and the TOSA position had merely been discussed, not offered. Klug testified that in view of the conflict between the therapist's letter stating that Lusebrink could go back into a general education classroom and Lusebrink's own statement that she could not, he asked Lusebrink to get medical clarification. "And if she can't do a classroom position, what restrictions she would have for the other jobs. And she said she would do that."

---

[3] Report of Proceedings (July 16, 2012) at 71-72.

5

After the June 9 meeting, Lusebrink saw the TOSA position posted on the district's website and thought that was "odd" because she thought it had been offered to her.[4] She formally applied for a transfer to the position. Halley, the director of special education services, "made sure that she got an interview" and was considered for the position.[5] However, Halley called Lusebrink in October and informed her that even though she was qualified for the position, a different applicant had been selected.

In December 2008, Miner informed Lusebrink that her employment with the district had been "terminated for administrative reasons."[6]

In March 2010, Lusebrink sued the district for, among other claims, failure to accommodate a disability in violation of RCW 49.60.180. The trial court denied cross motions for summary judgment on the claim of failure to accommodate. In July 2012, a jury returned a verdict for the school district. The court denied Lusebrink's motion for a new trial. Lusebrink appeals.

## "AFFIRMATIVE STEPS"

The jury answered "no" to two questions on the special verdict form: (1) "Did Kent School District fail to reasonably accommodate a disability of Cynthia Lusebrink?" and (2) "Did Kent School District fail to take affirmative steps to reasonably accommodate a disability of Cynthia Lusebrink?"

The two questions represented Lusebrink's two theories of disability

---

[4] Report of Proceedings (July 16, 2012) at 79.
[5] Report of Proceedings (July 19, 2012) at 62.
[6] Report of Proceedings (July 16, 2012) at 87-88.

6

discrimination. Her first theory was that the district should have accommodated her disability by placing her in a general education classroom. Most of the testimony at trial was concerned with the first theory. The jury's verdict rejecting the first theory is supported by substantial evidence that it was not safe for Lusebrink to teach in any classroom, even a general education classroom. Notably, the evidence included a letter written by Dr. Herner to the disability insurance carrier after the June meeting, stating that she considered Lusebrink to be "currently disabled from teaching."[7] As well, the jury was entitled to make the determination that Klug's recollection of what Lusebrink said at the meeting was credible.

Lusebrink's appeal is focused on the second theory: that the district failed to take affirmative steps to help her stay employed with the district in a position other than classroom teaching. She argues that the assistance the district gave her in scoping out possible alternative positions was too minimal to qualify as reasonable accommodation. She assigns error to the pertinent jury instruction and also contends that the evidence was insufficient to support the jury's "no" verdict on the second theory.

*Jury Instruction*

As the trial court observed, there is no pattern instruction defining what an employer must do with respect to finding a different position for an employee

---

[7] Report of Proceedings (July 17, 2012) at 135.

7

who, because of disability, is unable to continue in her existing position. The trial court gave instruction 11, adapted from Dean v. Municipality of Metropolitan Seattle-Metro, 104 Wn.2d 627, 632, 708 P.2d 393 (1985). Dean states that to make a prima facie case of disability discrimination, "an employee plaintiff must prove that he or she is handicapped, that he or she had the qualification required to fill vacant positions *and that the employer failed to take affirmative measures to make known such job opportunities to the employee and to determine whether the employee was in fact qualified for those positions.*" Dean, 104 Wn.2d at 639 (emphasis added); see also WAC 162-22-065(2)(c) (possible examples of reasonable accommodation include "Informing the employee of vacant positions and considering the employee for those positions for which the employee is qualified.")

Instruction 11 included language drawn from Dean:

> If plaintiff was not able to perform the essential functions of her job as a classroom teacher, then to establish her claim on the basis of failure to take affirmative steps to reasonably accommodate a disability, Cynthia Lusebrink has the burden of proving each of the following propositions:
> (1) That Kent School District was aware of her disability;
> (2) That she was qualified for and able to perform the essential functions of a vacant position in the Kent School District with reasonable accommodation; and
> (3) That the Kent School District failed to take affirmative measures to help her find and apply for another position, *such as making known such job opportunities to her, and determining whether she was in fact qualified for those positions.*

Jury instructions are reviewed de novo. An instruction that contains an

erroneous statement of the applicable law is reversible error where it prejudices a party. Thompson v. King Feed & Nutrition Serv., Inc., 153 Wn.2d 447, 453, 105 P.3d 378 (2005). Jury instructions are sufficient if they permit each party to argue his or her theory of the case, are not misleading, and when read as a whole, properly inform the jury of applicable law. Dean, 104 Wn.2d at 634.

The trial court engaged the parties in extensive colloquy about instruction 11. Lusebrink's formal objection was, "We believe that the instruction fails to adequately state that she cannot be treated as any other employee and that the school district has some responsibility to actually get her to fill a position."[8]

Lusebrink argues that an employer's duty to take affirmative measures includes an "affirmative requirement" to reassign the employee to an open position for which she is qualified, even if there are more qualified applicants. Lusebrink contends the duty to reassign is implicit in Dean, Clarke v. Shoreline School District No. 412, 106 Wn.2d 102, 720 P.2d 793 (1986), and Curtis v. Security Bank of Washington, 69 Wn. App. 12, 847 P.2d 507, review denied, 121 Wn.2d 1031 (1993). In Lusebrink's view, because she was qualified to fill the TOSA position, the district was obligated as a matter of law to offer it to her before allowing other applicants to compete for it. She contends instruction 11 was misleading because it did not allow her to make that argument. Instead, she was obliged to concede in argument that placement in an open TOSA position

---

[8] Report of Proceedings (July 24, 2012) at 49.

was a possible accommodation, not a requirement.[9]

Reassignment is *one* method of reasonable accommodation for an employee who becomes disabled on the job. Pulcino v. Fed. Express Corp., 141 Wn.2d 629, 643, 9 P.3d 787 (2000), overruled in part on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006). But reassignment to an open position is not mandatory as a matter of state law.

Our Supreme Court considered the issue of accommodation by reassignment in Davis v. Microsoft Corporation, 149 Wn.2d 521, 536-38, 70 P.3d 126 (2003). Davis was a systems engineer who was diagnosed with hepatitis C after he had worked at Microsoft for nine years. His disability discrimination claim consisted of two distinct theories similar to Lusebrink's: failure to accommodate him in his existing job by eliminating the requirement of overtime and failure to take affirmative steps to help him find a different job in the company. A jury found for Davis and awarded substantial damages. But because the verdict form was general and the evidence was insufficient to support the first theory, the Supreme Court reversed and remanded for a new trial.

As to Davis' second theory, there was evidence that Microsoft solicited information from Davis' physician to determine the extent of his disability, gave him six months to conduct his in-house job search, provided him with office

---

[9] Report of Proceedings (July 24, 2012) at 89.

space and immediate access to a computerized data bank, and assigned him a human resource specialist to assist him in the search. Davis, 149 Wn.2d at 537-38. Microsoft argued that these "affirmative steps" it had taken "to assist Davis in the reassignment process" compelled an order of judgment for Microsoft as a matter of law. Davis, 149 Wn.2d at 537. Davis responded that Microsoft "was asking him to embark on a snark hunt" and the assistance offered was not genuinely intended to help him find another position within the company that would be compatible with his disability and a 40-hour work week. Davis, 149 Wn.2d at 538. The court concluded the trial judge had correctly left the reasonableness of the employer's efforts for the jury to decide:

> [W]e decline to conclude, as the Court of Appeals appears to have done, that [Microsoft's] strategy amounted to a failure to accommodate Davis in the reassignment process. To take either position as a matter of law—i.e., to say that access to all company job listings was enough or to say that Microsoft was obligated to find an exact match before Davis had any duty to follow up—would be unwise. The reasonableness of any employer's approach will depend on a number of factors, such as the size of the employer and its database of open jobs, the nature of the job descriptions themselves (whether highly detailed or sketchy), the level of the involvement of the company's job counselor, and the advisability of disclosing the disability to the hiring supervisors prior to (or after) an initial interview. In sum, the fact-finder must determine whether Microsoft's efforts were reasonably calculated to assist Davis in finding an alternative position within the company.

Davis, 149 Wn.2d at 538.

Lusebrink relies on the Court of Appeals opinion. She does not cite the Supreme Court opinion in Davis and does not address the above passage

deferring to the fact finder to determine whether the employer's efforts are reasonably calculated to help the employee find an alternative position. Under Davis, 149 Wn.2d at 538, instruction 11 was correct because it allowed the jury to decide whether or not the district took "affirmative steps" that amounted to a reasonable accommodation.

Instruction 11 tracked Dean's holding that an employer must "take affirmative measures" to make job opportunities known to the employee and to determine whether the employee was in fact qualified for those positions. In Dean, the plaintiff was a former Metro bus driver who lost sight in his right eye and could no longer drive a bus. He obtained a jury verdict awarding him damages based on evidence that Metro failed to notify him of, or consider him for, jobs for which he was qualified. Metro argued on appeal that Dean failed to state a prima facie case of disability discrimination. The court held, however, that as long as Dean was qualified for open positions with Metro, all that he needed to show to establish a prima facie case was that "Metro did not take appropriate affirmative steps to help him find an alternative position within the company." Dean, 104 Wn.2d at 639.

> Metro treated him as any other job applicant, did not determine the extent of his disability, did not call him into the office to assist him in applying for other positions but left the initiative to him. He received no special attention from the personnel office when he tried to find another position within Metro. In addition, Metro acknowledged having job openings that Dean could not have discovered on his own. Metro personnel made themselves available to Dean but took no affirmative steps to help him find another position. This was

required of them as "reasonable accommodation".

. . . The evidence supports the jury's verdict that Dean carried his burden of persuasion and that Metro did not convince them that it had discharged its responsibility.

Dean, 104 Wn.2d at 639.

Lusebrink contends that the above-quoted language criticizing Metro for treating Dean as it would "any other job applicant" should have been incorporated into instruction 11. We disagree. The language was part of the court's discussion of the evidence; it was not part of the court's statement of what is necessary to establish a prima facie case. Dean does not support inserting language into instruction 11 to the effect that Lusebrink was entitled to preferential treatment as an applicant for a TOSA position. In crafting instruction 11, the court appropriately used the language from Dean defining what is needed for a prima facie case.

Curtis is similar to Dean. It affirms an award of damages where the fact finder determined that the employer had not taken "'affirmative steps'" to help the employee fill an available position. Curtis, 69 Wn. App. at 19, quoting Clarke, 106 Wn.2d at 121. It does not hold that reassignment to an available position is a mandatory element of a prima facie case.

In Clarke, the Supreme Court considered a hearing officer's decision upholding the discharge of a special education teacher whose hearing and vision had deteriorated severely. The court agreed that because of student safety issues, there was good cause for discharging the employee from his teaching

position. Clarke, 106 Wn.2d at 112, 116-17. But the court also said that the Washington Law Against Discrimination would require the school district "to transfer Clarke to a nonteaching position, if such a position exists and Clarke is qualified to perform it." Clarke, 106 Wn.2d at 122. Lusebrink contends that under Clarke, the district had a mandatory obligation to transfer her to a nonteaching position and instruction 11 was misleading because it did not say so.

Lusebrink's objection below to instruction 11 was not based on the language in Clarke about transfer to a nonteaching position. And in any event, a trial court is required to instruct the jury on a theory only where there is substantial evidence to support it. Stiley v. Block, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). Lusebrink testified that at the June 2008 meeting, she asked to be placed in a teaching position, either in a general education classroom or a TOSA position. She did not express interest in being reassigned to the nonteaching positions that were mentioned, such as food service, bus driving, and maintenance. She was advised to keep checking the district website for job openings she believed she would be qualified for and to let Klug know if she found a job she thought she could do. Lusebrink did not contact Klug after the meeting. After being rejected for the TOSA position, Lusebrink applied for an administrative assistant position in payroll. She tested for that position but was not called back for an interview. On appeal, Lusebrink points to no evidence

demonstrating that she was qualified for the payroll position. Absent evidence that a nonteaching position was available for which Lusebrink was qualified, the trial court was not required to adapt an instruction from <u>Clarke</u>.

In summary, instruction 11 was neither misleading nor incomplete. The instruction permitted Lusebrink to argue that a TOSA position would have allowed her to continue as a teacher in a nonclassroom setting, that she was qualified for a TOSA position, and that the district failed to take "affirmative measures" to determine whether she was in fact qualified for a TOSA position.

At oral argument before this court, Lusebrink argued that the district should have given her the TOSA position without considering other applicants. She cited federal cases to show that reassignment is mandatory under the federal Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, and its implementing regulations. <u>See</u>, <u>e.g.</u> <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154 (1999). But Lusebrink sued only under Washington's Law Against Discrimination. Although federal decisions interpreting the Americans with Disabilities Act can be instructive in determining the appropriate construction of our state law and regulations, <u>Clarke</u>, 106 Wn.2d at 118, our Supreme Court has not adopted the federal position that reassignment is mandatory. And it would be unfair to the district to consider the federal cases as instructive authority. Lusebrink did not cite the federal cases in her briefing, nor did she argue that Washington law should be changed to become consistent with federal case law.

*Motion for a New Trial*

In connection with her assignment of error to the order denying her motion for a new trial, Lusebrink contends the record contains insufficient evidence that the district satisfied its obligation under Dean to take affirmative measures.

A challenge to a jury verdict is reviewed under a sufficiency of the evidence standard. Winbun v. Moore, 143 Wn.2d 206, 213, 18 P.3d 576 (2001). A party challenging the sufficiency of the evidence admits the truth of the opposing party's evidence and all inferences that can be reasonably drawn therefrom. Holland v. Columbia Irrigation Dist., 75 Wn.2d 302, 304, 450 P.2d 488 (1969).

Lusebrink's argument on this issue is, in part, the same as her argument about instruction 11. She contends the district was obligated to reassign her to the TOSA position that she wanted. As discussed above, reassignment was a possible accommodation but not a mandatory one.

Lusebrink also argues the district "took no affirmative measures whatsoever" to accommodate her disability.[10] Substantial evidence permitted the jury to find otherwise. At the June 2008 meeting, district representatives offered to find Lusebrink a sit-down position in special education that would accommodate Dr. Herner's restrictions as stated in the May 2008 letter. Lusebrink presented the therapist's letter stating that she could not teach in a

---

[10] Appellant's Brief at 13.

special education classroom. But Lusebrink then expressed fear that she would not be safe in a general education classroom either. The district inquired about the possibility of a nonteaching position. Having had full access to the district's job postings, Lusebrink said she had not seen any that would be appropriate. The district ensured that Lusebrink continued to have online access to the district's list of job openings. Halley made sure Lusebrink was allowed to interview and be considered for the TOSA position. We conclude there was sufficient evidence supporting the jury's determination that the district did not fail to take affirmative steps to reasonably accommodate Lusebrink's disability.

*Violations of Orders in Limine*

A pretrial order prohibited evidence of settlement offers and negotiations. On direct examination, Lusebrink mentioned that she had applied for a librarian position but did not get it. The librarian position in question was one that the district included in a settlement offer discussed with Lusebrink's counsel between March and June of 2009, after Lusebrink was terminated. During the direct examination of Charles Lind, the district's general counsel, Lind testified that the district offered to put Lusebrink in a librarian position on the same salary schedule as teachers, an offer that she refused. Lusebrink did not object until the conclusion of Lind's testimony, at which time she moved for a mistrial.

After hearing extensive argument, the court denied the motion for a mistrial and gave a curative instruction:

17

> The parties dispute that the librarian paraeducator position would have been the same pay as Ms. Lusebrink had as a school teacher. And the position was not simply rejected, instead there was a counteroffer by Ms. Lusebrink which did not result in an agreement between the parties.
>
> You are instructed to disregard any testimony you have heard regarding the application for or the offer and the rejection of a librarian or librarian paraeducator position. This means you are not to consider any of this testimony in your deliberations in this case.
>
> This testimony is not evidence of an accommodation by the Kent School District of Ms. Lusebrink's claimed disability. Instead, this testimony is part of a commendable, but unsuccessful effort by both parties to settle this case.
>
> Settlement discussions are not relevant to any issue you must decide; therefore, the Court is striking this testimony because it relates to settlement discussions. You are instructed that you may not consider this testimony for any purpose.[11]

Lusebrink indicated that the wording was acceptable.[12]

Denial of a motion for mistrial is reviewed for abuse of discretion. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). A court should grant a mistrial only when a party has been so prejudiced that nothing short of a new trial could ensure a fair trial. Hopson, 113 Wn.2d at 284. We conclude the court dealt with the situation appropriately by telling the jury to disregard Lind's testimony about the librarian position. We presume juries follow the trial court's instructions. State v. Hanna, 123 Wn.2d 704, 711, 871 P.2d 135, cert. denied, 513 U.S. 919 (1994).

Also prohibited by pretrial order was evidence comparing Lusebrink's qualifications for the TOSA position to the qualifications of the candidate who

---

[11] Report of Proceedings (July 19, 2012) at 188-89.
[12] Report of Proceedings (July 19, 2012) at 178.

18

was hired for it. During closing argument, the district made the following statement implying that the candidate chosen was the best qualified:

> And I think you can safely assume that this hiring committee that Ms. Halley was on, you saw her, she's a very careful deliberate lady, that committee took great care to listen to everybody's answers, to interview, and arrive at hiring the person that best suited the District for that job.[13]

Lusebrink objected. The court sustained the objection and admonished the jury that closing argument is not evidence and the statement should be disregarded.

A new trial may be properly granted based on misconduct of counsel (and not mere aggressive advocacy) where the misconduct is prejudicial in the context of the entire record, the movant properly objected, and the misconduct was not cured by court instructions. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 540-41, 998 P.2d 856 (2000). To the extent that the district's argument violated the order prohibiting discussion of comparative qualifications, we conclude the misconduct was sufficiently mitigated by the curative instruction.

Affirmed.

Becker, J.

WE CONCUR:

_____          Leach, C. J.

---
[13] Report of Proceedings (July 24, 2012) at 138.