[No. 24163-3-II.   Division Two.   December 17, 1999.]
JUDITH DEDMAN, *Appellant*, v. PERSONNEL APPEALS BOARD, ET AL., *Respondents*.

---

[77]*Roberts*, at 833.

[78]*Aponte*, 738 A.2d at 127-28; *see McGravey*, at 1349.

*Mark Spencer Lyon*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Richard Allen Heath, Senior Assistant*, for respondent Washington State Personnel Appeals Board.

*Christine O. Gregoire, Attorney General,* and *Elizabeth Delay Brown, Assistant,* for respondent Department of Corrections.

HUNT, J. — Department of Corrections (DOC) employee Judith Dedman appeals the Washington Personnel Appeals Board (PAB) ruling that, because her permanent disabilities prevented her from physically restraining inmates, she could not perform the essential functions of a correctional officer. The PAB, therefore, concluded that DOC properly removed her from her job in the control booth and reassigned her to a clerical position. We affirm.

## FACTS

In February 1993, Dedman was appointed a correctional officer (guard) for the Washington Corrections Center for Women in Gig Harbor (WCCW), a facility housing approximately 625 female felons.[1] Dedman worked at a variety of posts throughout the facility until November 1994, when she was temporarily assigned to the control booth to accommodate a knee and back injury. That assignment became permanent in December 1994, following Dedman's successful bid under the terms of a collective bargaining agreement.[2]

The control booth is a locked room with reinforced glass

---

[1]Dedman has a history of employment as a correctional officer at other penal facilities throughout California and Washington.

[2]Dr. Wouter Bosch, who was treating Dedman for her knee injury, released her to work with "no restrictions" on Feb. 1, 1995, but questioned how long her knee

windows; it serves as the primary control center for WCCW. Correctional officers assigned to that post operate the facility's gates and doors, process communications, issue keys to staff, and operate audio and video surveillance systems. While inside the control booth, the officers have no physical contact with inmates. Correctional officers assigned to the control booth seldom leave it during their shifts. But there is always the possibility that such officers may be called upon to restrain inmates in the event of an emergency.

In early April 1996, Dedman was scheduled to attend a routine training session for correctional officers. On the first day of the session, April 26, Dedman gave her supervisor a note from her chiropractor, James Murphy, D.C., which stated that, because of back problems, Dedman was "not to participate in any defense tactics training at this time." In response, WCCW provided Dedman's physician, Lowell Finkleman, M.D., with a form entitled, "Essential Duties of a Correctional Officer," and asked him to comment on Dedman's ability to perform those duties.

Dr. Finkleman expressed concern in relation only to essential duty number three:

> Stand, bend, squat, and stoop to pat search and/or apply handcuffs, waist chains, and/or leg irons to a resistive or non-resistive inmate. Physically able to engage in physical force to subdue an inmate, which may include assisting in the physical movement of an inmate (average weight 150 lbs.) to another area.

Dr. Finkleman wrote:

> I am not convinced that she is agile enough or strong enough to wrestle with inmates. She has suffered low back and knee injury related to her work along with arthritic changes in the spine and knees. Due to her injuries and arthritis, I do not feel she should safely be expected to wrestle with inmates. I recommend continuing current light duties job which is totally acceptable.

---

would continue to hold out. The record does not reflect the extent to which her back had healed before her permanent assignment to the control booth.

In Dr. Finkleman's opinion, Dedman's condition was permanent.

Based on that information, WCCW reassigned Dedman to a light duty clerical post, away from the control booth. From May through August 1996, Dedman filed grievances and requested returning to the control booth as a reasonable accommodation. Because Dedman was unable to use physical force to subdue an inmate, and because the need might arise to move her from the control booth to a post with inmate contact, DOC denied her grievances and requests. During this time, DOC searched for alternative, permanent jobs for which Dedman was qualified.

On August 16, 1996, WCCW superintendent Alice Payne gave Dedman the option of accepting either a demotion to supply control technician or a disability separation.[3] Dedman chose the former and appealed to the PAB, seeking reinstatement as a correctional officer assigned to the control booth and an award of back pay and benefits retroactive to the date of demotion.[4]

Following a hearing, the PAB denied Dedman's appeal, concluding that: (1) physical contact with inmates is an essential function of the correctional officer position at WCCW, which function Dedman could not perform; (2) the case is analogous to *Kees v. Wallenstein*, 973 F. Supp. 1191, 1196 (W.D. Wash. 1997), *aff'd*, 161 F.3d 1196 (9th Cir. 1998), holding that King County jail correctional officers whose disabilities precluded direct contact with inmates could not, with or without accommodation, perform an essential function of their job; (3) WCCW made good faith efforts to accommodate Dedman; and (4) Dedman failed to meet her burden of proof on appeal. Dedman petitioned for judicial review in Thurston County Superior Court, which affirmed

---

[3]Under the civil service rules, "[w]hen reasonable accommodations cannot be provided, the employee may be separated by the appointing authority after written notice." WAC 356-35-010(3).

[4]Dedman states that she made roughly $375 per month less as a supply control technician than she did as a correctional officer, but she does not set forth any disparity in benefits.

the PAB's decision. By the time of the superior court hearing, Dedman had been reinstated as a correctional officer at WCCW after a physician found her able to perform the essential duties of a correctional officer.[5]

On appeal, Dedman seeks reversal of the PAB's decision, reinstatement as a correctional officer assigned to the WCCW control booth, and back pay and benefits. At oral argument, Dedman acknowledged that she has been reinstated to her job in the control booth and, thus, she abandons reinstatement as an issue on appeal.

## ANALYSIS
### I. MOOTNESS

Because Dedman has been reappointed as a correctional officer at WCCW and reassigned to the control booth, she concedes that her request for reinstatement is moot. *See State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983) (a controversy is moot if it presents purely academic questions to which judicial response would be meaningless).[6] Thus, the remaining issues concern her request for back pay and benefits for the period between her demotion and reinstatement.

### II. STANDARDS OF REVIEW

██ ██ We review the PAB's decision de novo, but we use the same standards of review as did the superior court. *Adams v. Department of Soc. & Health Servs.*, 38 Wn. App. 13, 14, 683 P.2d 1133 (1984). An employee may appeal a PAB decision if it is: (1) founded on an error of law; (2) contrary to the evidence; (3) materially affected by unlawful procedure; (4) based upon a constitutional violation; or (5) arbitrary and capricious. RCW 41.64.130(1)(a)-(e). A

---

[5]The superior court indicated that Dedman's reinstatement had no bearing on its decision.

[6]Except for the representations of counsel, the record does not indicate Dedman's current post assignment, but she does not contend that the DOC is currently engaging in discrimination with respect to her job assignment.

PAB decision is arbitrary and capricious if it is willful and unreasonable, and made without consideration and in disregard of facts or circumstances. *See National Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 29, 978 P.2d 481 (1999).

■■ We review factual challenges to a PAB decision to determine only "whether 'there exists . . . any competent, relevant and substantive evidence which, if accepted as true, would, within the bounds of reason, directly or circumstantially support the challenged finding or findings.' " *Ballinger v. Department of Soc. & Health Servs.*, 104 Wn.2d 323, 328, 705 P.2d 249 (1985) (quoting *Gogerty v. Department of Insts.*, 71 Wn.2d 1, 8-9, 426 P.2d 476 (1967)). As to asserted errors of law, we may essentially substitute our " 'judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law.' " *Sullivan v. Department of Transp.*, 71 Wn. App. 317, 321, 858 P.2d 283 (1993) (quoting *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982)), *review denied*, 123 Wn.2d 1018, 871 P.2d 600 (1994).

### III. DISABILITY DISCRIMINATION

Under Washington's Law Against Discrimination (WLAD), an employer may not "discharge or bar any person from employment because of . . . any sensory, mental, or physical disability."[7] RCW 49.60.180(2). Rather, an employer must reasonably accommodate an employee's disability unless to do so would impose an undue hardship on the employer's business. WAC 162-22-080(1). But the prohibition against disability discrimination does not apply if the disability prevents the employee from properly performing her job. WAC 162-22-050.

---

[7]RCW 49.60.030(1)(a) provides, in pertinent part: "[t]he right to be free from discrimination because of . . . the presence of any sensory, mental, or physical disability . . . is recognized as and declared to be a civil right" which includes "[t]he right to obtain and hold employment without discrimination." Generally, this legislative edict is applicable in any employment context in which there are at least eight employees. RCW 49.60.040(3).

■ ■ To establish a prima facie case of disability discrimination, an aggrieved employee must show that she: (1) has a disability; (2) can perform the essential functions of the job; and (3) was not reasonably accommodated. *See Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 579, 731 P.2d 497 (1987), *rev'd on other grounds, Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); *Dean v. Municipality of Metro. Seattle*, 104 Wn.2d 627, 639, 708 P.2d 393 (1985).[8] "In cases such as this, where the employer acknowledges reliance on the [disability], once the employee establishes a prima facie case of [disability] discrimination, the burden shifts to the employer to rebut the inference with evidence that the [disability] was relevant to the requirements of the position." *Sherman v. State*, 128 Wn.2d 164, 198, 905 P.2d 355 (1995).[9]

Here, there is no dispute as to the first factor: Dedman had disabilities that prevented her from being in physical contact with inmates. Because of her disabilities DOC reassigned her from her position as a correctional officer. Thus, we focus on the two remaining factors: whether inmate contact is an essential job function of a correctional officer and whether the DOC reasonably accommodated Dedman's disabilities.

## A. Essential Functions

Dedman contends that physical contact with inmates is

---

[8]*Accord Willis v. Pacific Maritime Ass'n*, 162 F.3d 561, 565 (9th Cir. 1998) (stating elements of a prima facie case under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213); *Lucero v. Hart*, 915 F.2d 1367, 1371-72 (9th Cir. 1990) (listing elements for a prima facie case under the Rehabilitation Act, 29 U.S.C. §§ 701-796l). Federal law is instructive with regard to our state discrimination laws. *Clarke v. Shoreline Sch. Dist.*, 106 Wn.2d 102, 118, 720 P.2d 793 (1986); *Dean*, 104 Wn.2d at 636.

[9]In cases where the employer's motive is in question, once a prima facie case is established, the burden of proof shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged act. *Dean*, 104 Wn.2d at 637 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); *accord St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993) (clarifying the *McDonnell Douglas* burden-shifting scheme).

not an essential function of a correctional officer's job. She asserts that the PAB failed to consider the more limited physical functions performed by a correctional officer while assigned to the control booth, claiming that she was merely a "control booth officer," not a general "correctional officer."

The federal Equal Employment Opportunity Commission has suggested criteria to determine which job functions are essential: (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past employees in the job; and (7) the current work experience of employees in similar jobs. 29 C.F.R. § 1630.2(n)(3).

In concluding that physical contact with inmates is an essential function of a correctional officer's job, the PAB considered that: (1) Dedman was hired and employed as a general "correctional officer"; (2) correctional officers at WCCW are expected to be able to perform each of the essential functions of the job, regardless of their post assignments; (3) the state personnel department's written "Specification for Class of Correctional Officer" provides that "typical work" includes "physical and lethal uses of force"; (4) WCCW's written "Essential Duties of a Correctional Officer" provides that a correctional officer must be "able to engage in physical force to subdue an inmate"; and (5) WCCW's superintendent, Alice Payne, viewed inmate contact as an essential function.

Dedman argues that being able to subdue an inmate is not essential to her job because there is usually no direct inmate contact involved in the control booth assignment, and it would be extremely rare that a "control booth officer" could be reassigned to another post. Although Dedman's assignment to the control booth is "permanent" under the terms of the collective bargaining agreement, that agreement also contemplates a variety of critical cir-

cumstances under which Dedman could be called from the control booth and temporarily reassigned to another post. Those circumstances include fires, riots or other disturbances, gender searches, and staffing shortages.

The PAB heard testimony from a number of witnesses that flexibility in staffing under those circumstances is of paramount importance to a correctional facility such as WCCW. Robert Turk, a DOC personnel manager and ex-WCCW correctional officer, testified that he had worked in the control booth for a number of years and had been pulled out on more than one occasion to escort an inmate or to deal with a disturbance.[10] It is not a proper court function to allow Dedman unilaterally to alter DOC's requirements for correctional officers or to modify her job description as a control booth officer based on her relatively limited experience and her personal wishes.

Dedman also contends that *Kees v. Wallenstein*, 973 F. Supp. 1191 (W.D. Wash. 1997), *aff'd*, 161 F.3d 1196 (9th Cir. 1998), does not support the PAB's decision. In that case, King County removed correctional officers from their jobs because their disabilities precluded physical contact with inmates. *Id.* at 1192. The officers sued under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213,[11] and WLAD, seeking reinstatement as correctional officers and permanent assignment to the control room as an accommodation. 973 F. Supp. at 1193. The court found compelling that numerous written job descriptions listed physical contact with inmates as an essential job function and that the ability to respond to emergencies was itself an essential job function. *Id.* at 1194. After finding that physical contact with inmates was an essential job function, which the plaintiff officers could not perform with, or without, reasonable accommodation, the court granted summary judgment against them. *Id.* at 1196.

---

[10]In contrast, Dedman had worked in the control booth for a relatively short time, less than two years.

[11]Dedman has not filed an ADA claim, although she concedes that the ADA can be used to interpret WLAD.

Dedman attempts to distinguish *Kees* by arguing that the King County jail correctional officers were more likely to encounter inmates because they responded to emergencies while on break outside the control room, and because there were no permanent assignments to the control room. *Id.* at 1195, 1197. But Dedman's assignment to the control booth at WCCW was "permanent" only to the extent emergencies, gender searches, and staffing shortages permitted. That Dedman had not yet been called from the control booth on such occasions during her 17-month assignment did not guarantee that she would not be called out of·the booth to render such aid in the future. Dedman's limited experience does not overcome the DOC's prima facie showing that inmate contact is an essential job function of a correctional officer. Nor should DOC be required to jeopardize its unique duty to provide prison security in order to accommodate Dedman in the precise way that she requests.

> [T]he very reason a corrections officer position exists is to provide safety and security to the public, as well as to [WCCW] employees and inmates; as such, the *ability* to provide safety and security, including the *ability* to respond without hesitation or limitation in an emergency is absolutely inherent to that position.

*Martin v. Kansas*, 190 F.3d 1120, 1132 (10th Cir. 1999) (emphasis added) (rejecting argument of former correctional officer that his seniority and pattern of assignments omitted inmate contact as an essential function of his job).[12]

We affirm the PAB's conclusion that physical contact

---

[12]Contrary to Dedman's contention, *Stone v. City of Mount Vernon*, 118 F.3d 92 (2d Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998), does not undermine the PAB's conclusion. In *Stone*, a discharged firefighter, whose disability prevented him from performing fire suppression duties, sought accommodation through permanent assignment to a different fire department bureau that either processed fire alarms or enforced fire prevention and building codes. *Id.* at 93, 94. The Second Circuit held that fire suppression was not an essential function of either assignment, largely because firefighters assigned to those bureaus had never been called upon to suppress fires. *Id.* at 99-100. The Second Circuit, thus, discounted the fire department's opinion that the

with inmates is an essential function of a correctional officer job at WCCW and that so long as Dedman was unable to perform this essential function, DOC was justified in assigning her to a noncorrectional officer position that would not entail the possibility of inmate contact, such as the clerical position to which she was reassigned.

## B. Reasonable Accommodation

WAC 162-22-080(1) provides:

> It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the sensory, mental, or physical limitations of employees . . . unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business.

The DOC "may initiate a disability separation of a permanent employee only when reasonable accommodations cannot be provided." WAC 356-35-010(1). "Reasonable accommodation" is defined as:

> Reasonable alterations, adjustments, or changes . . . in the job, workplace and/or term or condition of employment which will enable an otherwise qualified person of disability . . . to perform a particular job successfully, as determined on a case-by-case basis.

WAC 356-05-333.

Dedman's physician opined that her physical disabilities rendered her incapable of inmate contact. The PAB concluded that, because she could not perform this essential job function, there was no reasonable accommodation that DOC could make that would allow Dedman to function as a

---

capacity to fight multi-alarm fires would be unduly hampered by employing in one of those bureaus a firefighter who could not suppress fires. *Id.* at 99.

In contrast, here, a former WCCW correctional officer testified that on more than one occasion he had been called out of the control booth to perform duties involving inmate contact. Further, under the accommodation Dedman requested, she would remain in a post inextricably connected to the incarceration of felons; she has not requested assignment to another branch or "bureau" of DOC. *Stone* is, therefore, inapposite.

correctional officer without jeopardizing DOC's operation of WCCW. The PAB's decision is consistent with WAC 162--22-050, which provides that the prohibition against disability discrimination does not apply where, as here, the employee's disability "prevents the proper performance of the particular worker involved."

*Clarke v. Shoreline School District*, 106 Wn.2d 102, 720 P.2d 793 (1986), is instructive. Clarke, a teacher of mentally retarded students, suffered from visual and hearing impairments. *Id.* at 103. The school district placed him on probation for, among other things, failing adequately to handle student discipline problems. *Id.* at 106. The school district attempted to accommodate Clarke by giving him instructional assistants, choosing his students based on his limitations, and giving Clarke special consideration in the assignment of a classroom. *Id.* at 107. Clarke, nevertheless, requested further accommodations. *Id.* at 107-08. Ultimately, the school district discharged Clarke for failing to remedy the deficiencies for which he was on probation. *Id.* at 108.

The Supreme Court noted that: (1) WLAD's prohibition against discrimination does not apply if the disability prevents proper performance of the job; and (2) an employer must reasonably accommodate an employee's disability unless such an accommodation would impose an undue hardship on the employer's business. *Id.* at 117-18. The court then looked to section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794, for guidance, and concluded:

an employer may discharge a handicapped employee who is unable to perform an essential function of the job, without attempting to accommodate that deficiency. In this case, the Superintendent gave as one of the reasons for Clarke's discharge and nonrenewal the fact that Clarke constituted "a hazard to the welfare and safety of students under [Clarke's] charge . . ." As found by the hearing officer, this deficiency in Clarke's performance was attributable to his handicaps. Maintenance of the safety and welfare of retarded students clearly is an essential function of a teacher of such students, a function Clarke was unable to perform. In other words, Clarke was

not "otherwise qualified" to teach. Accordingly, we hold the School District was not required to accommodate Clarke in the manner he requested.

106 Wn.2d at 119 (footnote omitted). The court next noted that, while the school district "was not required to accommodate Clarke in order to permit him to remain in a *teaching position*," it nevertheless "was required to attempt to accommodate Clarke by considering him for transfer to a *nonteaching position.*" *Id.* at 119-20, 122.

The facts in *Clarke* are analogous to the facts here. As the PAB ruled, the DOC was not required to accommodate Dedman in order to permit her to remain in a correctional officer position where her disabilities rendered her unable to perform an essential function of the job and thus jeopardized the safe and orderly operation of the prison. The DOC, however, did accommodate her by reassigning her to a clerical position, which her disabilities did not render her unable to perform.

■ In *Doe v. Boeing Co.*, 121 Wn.2d 8, 18, 846 P.2d 531 (1993), the Washington Supreme Court further refined the requirement of reasonable accommodation: "[T]he scope of an employer's duty to accommodate an employee's condition is limited to those steps reasonably necessary to enable the employee to perform his or her job."[13] Our decisions are in accord.[14]

---

[13]This holding is consistent with settled federal antidiscrimination law that "requires an employer to make whatever accommodations are *reasonably* possible in the circumstances so as *to allow the employee to perform the functions essential to his position.*" *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) (ADA case) (emphasis added). *See also Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) (under sections 501 and 504 of the Rehabilitation Act, "an individual with handicaps is 'qualified' if she can perform the essential functions of her position with reasonable accommodation. If she can perform these functions *without* reasonable accommodation, so much the better—she is, of course, still qualified"); *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995) (same under the ADA and the Rehabilitation Act).

[14]*See, e.g., Bass v. City of Tacoma*, 90 Wn. App. 681, 688, 953 P.2d 129, 976 P.2d 1248 (1998) (A plaintiff must prove as part of her WLAD claim, that "she was, or with reasonable accommodation would have been, able and qualified to

Thus, under federal law, and as reflected in *Boeing* and *Clarke*, an employer's duty to accommodate does not require either elimination of an essential job function or the imposition of an undue burden on the employer. *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 1131 n.17, 94 L. Ed. 2d 307 (1987) (Rehabilitation Act case).[15] And under federal law and WLAD, the issue of undue hardship does not arise unless the employer fails to attempt *any* reasonable accommodation. *Sharpe v. American Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995). If,

> rather than defending the reasonableness of the accommodation it chose, [the employer] were required to prove that [the employee's] proposed accommodation would have imposed an undue burden, [the employee] would effectively be choosing the accommodation, not [the employer].

*Id.* at 1050. An employer is not required " 'to offer the employee the precise accommodation he or she requests,' " *Id.* (quoting *Boeing*, 121 Wn.2d at 20), or to create a job where none exists, *Clarke*, 106 Wn.2d at 121.

Even if DOC had provided absolutely no accommodation to Dedman, as the PAB found from the testimony of Payne and Turk, restrictions on corrections staffing flexibility, such as those Dedman requested, would create an undue hardship on WCCW's ability to respond in foreseeable emergency situations. That Dedman had not been called

---

perform the essential functions of the job."), *review denied*, 137 Wn.2d 1005, 972 P.2d 466 (1999); *Herring v. Department of Soc. & Health Servs.*, 81 Wn. App. 1, 30, 914 P.2d 67 (1996) ("[I]f the person cannot complete the essential functions of the job *even with* a reasonable accommodation, then the employer may discharge the employee." (emphasis added)); *Parsons v. St. Joseph's Hosp.*, 70 Wn. App. 804, 807, 856 P.2d 702 (1993) (In a reasonable accommodation case, "the central idea is that an employer cannot fire an employee for poor job performance if the poor job performance was due to [a disability] and reasonable accommodation would have rectified the problem.").

[15]*See also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1169 (10th Cir. 1999) (ADA case); *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 512 (1st Cir. 1996) (ADA case); *Wood v. Omaha Sch. Dist.*, 985 F.2d 437, 439 (8th Cir. 1993) (Rehabilitation Act case).

from the control booth to respond to such emergencies does not alter DOC's job description for necessary qualifications of a correctional officer assigned to the control booth.[16]

Because we have held that the ability to restrain an inmate is an essential function of a correctional officer's job, Dedman, by virtue of her disabilities, was unable to perform the job. Therefore, DOC could not make accommodations to enable her to remain a correctional officer during the period of her disabilities, and such accommodation was not required.

After Dedman's physician initially stated she could not have physical contact with inmates, DOC's responsibility to accommodate Dedman's disabilities was limited to locating an opening for which she was qualified. *See Clarke,* 106 Wn.2d at 121. The supply control technician job DOC offered her was a reasonable accommodation. Dedman has failed to meet her burden of proving a prima facie case of disability discrimination.

We hold that the superior court correctly upheld the decision of the PAB; we likewise affirm the PAB's finding that, because Dedman's disabilities prevented her from performing an essential job function, which no reasonable accommodation would enable her to perform, the DOC lawfully reassigned her from a correctional officer position to a clerical position.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.

---

[16]Moreover, if the DOC were to grant Dedman an exemption from the physical contact requirement, it would have to grant exemptions to other correctional officers, thus compounding the degree of undue hardship. *See Molloy v. Bellevue,* 71 Wn. App. 382, 390, 859 P.2d 613 (1993) (exempting a former police officer from the department's policy, that all noncivilian officers be able to perform each duty of a patrol officer, would endanger public safety when applied department-wide), *review denied,* 123 Wn.2d 1024, 875 P.2d 635 (1994).