[No. 43712-7-I.   Division One.   February 28, 2000.]
Lawrence Easley, *Appellant*, v. Sea-Land Service, Inc., et al., *Respondents*.

*Ellen M. Ryan*, for appellant.

*Alexander J. Higgins* and *Frederick T. Rasmussen* of *Stokes Lawrence, P.S.*, for respondents.

ELLINGTON, J. — Washington law requires that an employer provide reasonable accommodation to an employee with a disability. The question here is whether the jury should have been instructed that the employer must prove a proposed "reasonable" accommodation constituted an undue hardship to the employer. We hold that such an instruction was required, and reverse.

## FACTS

Lawrence Easley was one of about 116 journeyman mechanics working at Sea-Land Service. Sea-Land's journeyman mechanics are assigned to work in specific areas. Each area has different duties and requires physical labor to some degree. Once assigned to an area, the mechanics do not rotate. Seniority plays no role in assignment. Sea-Land has a policy that mechanics should ask for help to lift more than 50 pounds.

Easley worked in the van shop, the most physically demanding of all areas. On August 15, 1991, while using an air-powered chisel to open a rusty container door, Easley suffered a herniated disc. Easley went on medical leave. Dr. Juan Juarez and Dr. Kelvin Ma recommended Easley not do "racheting jobs" or anything that would jeopardize his neck. When he returned to work, he was assigned to the van shop. Easley requested a position in the less rigorous "inspection lane." After a brief period there, he was sent back to the van shop.

While processing Easley's worker's compensation claim, Sea-Land became alarmed by his medical records and sent him home out of concern he would suffer further injury. Sea-Land did not try to find a job Easley could do or ask him about the specific nature of his medical restrictions.

Easley underwent a physical capacities examination (PCE) in December 1991. The PCE occupational therapist recommended that Easley not return to his job of injury

because it requires continuous use of air tools, and that light duty positions be considered. Easley hand-delivered the PCE report to Sea-Land, but was told it was not acceptable because the therapist did not have a description of the mechanic job.

Sea-Land set up an independent medical examination (IME) on January 29, 1992. The IME confirmed Easley could return to work with restrictions as stated in the PCE. The doctors pronounced Easley "fit for employment" and recommended restrictions against lifting more than 30 pounds above the shoulder for the next 90 days. The report continued:

> At the end of that time, Mr. Easley will know if he is able to do his regular job, and I am sure he will do that job if he is capable. If such is not the case, I would recommend that he be maintained on a permanent basis with restrictions against lifting 30 pounds above the level of his shoulders.

Easley did not receive a copy of the IME report and was not informed of the doctors' recommendations.

On March 9, 1992, Sea-Land told Easley to return to work. He was again assigned to the van shop. As before, he consistently requested lighter assignments.

In July 1992, while Easley was on vacation, Sea-Land eliminated the inspection lane where Easley had been working. When he returned, Easley was sent to the van shop. Easley complained, then met with management. During that meeting, Sea-Land called Crawford & Company, its worker compensation administrator, to ask if they could legally require Easley to work in the van shop. A Crawford representative responded that Easley could work anywhere provided he was not required to lift more than 30 pounds over his shoulders.

Later that month, Sea-Land sent Easley to a second IME to determine if Easley could return to his job of injury. After the exam, Easley returned to the van shop. That same day, the IME doctors faxed to Sea-Land a one-page "check list" of restrictions and recommended Easley not return to his job of injury. The restrictions included no air tool use or

other jarring activity, work in a "medium job description," no lifting over 50 pounds, but frequent lifting of up to 25 pounds was permitted. The check list recommended no further treatment. At the end of the day, Sea-land told Easley not to return to work until called. The responsible Sea-Land manager testified he released Easley from work when he learned he had permanent restrictions.

One week later, Sea-Land received a more detailed IME report confirming the panel's preliminary determination that Easley's condition was stable and he needed no further treatment. The panel concluded he had zero percent permanent partial impairment. Nonetheless, the panel concluded:

> [I]t would be prudent to place some job restrictions on him in regards to a permanent restriction of not using air-type tools or other activities that would produce jarring to his cervical spine. Other lifting restrictions should correspond to a medium work duty . . . . We do feel that these restrictions should remain on a permanent basis, such that he is at a high potential for recurrent radiculopathy and further herniation of this disc, which in the future could even represent a surgical lesion.

On October 15, 1992, Crawford & Company informed Easley that based on the opinions of Dr. Juarez and the independent IME panel, his condition was at a maximum improvement and he could not return to his job of injury as a result of the physical restrictions. Easley was told to work with a vocational counselor to determine his employability outside of Sea-Land.

In an October 16, 1992 letter, the IME panel confirmed Easley could work as a mechanic if the work were modified to medium level. The report detailed Sea-Land's light, medium, and heavy duty positions and concluded Easley could perform all except the heavy duty positions. The report was not provided to Easley. During this time, Easley repeatedly requested assignment to jobs he could do, which he identified. Sea-Land refused.

In November, Sea-Land and Easley conducted a "walk-

through" of the Sea-Land jobsites to determine which jobs Easley could perform. Easley was not placed in any job.

On December 10, 1992, Easley filed a disability discrimination claim with the Tacoma Human Rights Commission (Commission). The Commission found reasonable cause to believe that Sea-Land had discriminated against Easley on the basis of his disability in violation of the Tacoma City Code and the Americans with Disabilities Act.

Easley filed suit under the Washington Law Against Discrimination. The court granted summary judgment in favor of Sea-Land, which this court reversed.[1] At trial, a jury found Sea-Land had not discriminated against Easley. The trial court denied Easley's motion for judgment as a matter of law or a new trial.

## DISCUSSION

### Undue Hardship Instruction

Easley's theory of the case was that Sea-Land failed to reasonably accommodate his disability. Easley proposed Washington Pattern Instruction (WPI) 330.34, which provides in part: "[T]he employer must provide a reasonable accommodation for an employee with a disability unless the employer can show that the accommodation would impose an undue hardship on the employer." Easley also proposed WPI 330.36, providing in part: "An employer is not required to accommodate an employee's disability if it would impose an undue hardship on the operation of the employer's business. Sea-Land Service has the burden of proving that an accommodation would impose an undue burden on it."

Sea-Land's theory of the case was that Easley could not perform the essential functions of his job and that he failed to prove Sea-Land did not make a reasonable accommodation. Sea-Land contended it was not required to raise the undue hardship defense, and that because it did not raise it, an instruction on undue hardship would confuse the jury.

[1] *Easley v. Sea-Land Serv., Inc.*, No. 39543-2-I (Wash. Ct. App. Jan. 20, 1998).

The trial court agreed with Sea-Land: "I am inclined toward the view that the undue hardship claim may or may not be injected into a case based upon the defendant's position." The court instructed the jury that an employer is required to provide a reasonable accommodation for an employee with a disability and inquire into the nature and extent of that disability.[2] The trial court's instructions defined "essential functions"[3] of a job[4] and advised that the

---

[2]Jury Instruction 9 provided:

Under Washington law, an employer must provide a reasonable accommodation for an employee with a disability. The obligation to reasonably accommodate applies to all aspects of employment and an employer cannot deny an employment opportunity to a qualified employee because of the need to provide reasonable accommodation.

Once an employee's disability is known to an employer, the employer has a duty to inquire regarding the nature and extent of the disability. The employee has a duty to cooperate with the employer's efforts by explaining the employee's disability, qualifications and limitations. The employer must then take positive steps to reasonably accommodate the employee's limitations.

There may be more than one possible reasonable accommodation for a disability. So long as a reasonable accommodation is provided, it need not be the precise accommodation sought by the employee.

A reasonable accommodation may include adjustments in job duties, work schedules, scope of work and changes in the job setting that enable the person to perform the essential functions of the job. The law does not require the employer to eliminate essential functions of a job or to create a new position in order to provide reasonable accommodation.

[3]Jury Instruction 10 provided:

The essential functions of a job are the position's fundamental duties. Essential functions do not include the marginal or incidental functions of the job. In determining whether a function is essential to a position, you should consider:

(1) whether the reason the position exists is to perform that function;

(2) the employer's judgment as which [sic] functions are essential;

(3) the judgment of those who have experience working in and around the position in question;

(4) any written job descriptions such as those used to advertise the position; and

(5) the amount of time spent on the job performing the particular function.

[4]Easley argues Instruction 10 impermissibly imported federal terms not found in the Washington Law Against Discrimination. Although the statute and regula-

plaintiff has the burden of proving the elements of a discrimination claim for failure to reasonably accommodate.[5] The court refused to give Easley's proposed WPI 330.36 on undue hardship and deleted "unless the employer can show that the accommodation would impose undue hardship on the employer" from the language in WPI 330.34 on reasonable accommodation. As given, the jury instructions made no reference to "undue hardship."[6]

tions do not refer to "essential functions of the job," the Supreme Court has incorporated such language from federal case law:

> This court has held that, when Washington statutes or regulations have the same purpose as their federal counterparts, we will look to federal decisions to determine the appropriate construction.
>
> . . . .
>
> . . . [A]n employer cannot refuse to hire or discharge a handicapped employee simply because he is handicapped. On the other hand, no such prohibition exists if the handicap prevents performance of the "essential functions of the job." We believe a similar construction applies to RCW 49.60.180.

*Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 118-19, 720 P.2d 793 (1986) (citations omitted) (discussing 29 U.S.C. § 794 and accompanying case law). Thus, with respect to the "essential functions" language, the court did not err.

[5]Jury Instruction 11 provided:

> To establish his claim of discrimination by a failure to reasonably accommodate a disabled employee, the plaintiff has the burden of proving each of the following propositions:
>
> (1) that the plaintiff had a disability;
>
> (2) that the defendant was aware of the disability;
>
> (3) that the plaintiff was able to perform the essential functions of the job in question with or without reasonable accommodation; and
>
> (4) that the defendant failed to reasonably accommodate the plaintiff's disability.
>
> If you find from your consideration of all the evidence in the case that each of these propositions have been proved, your verdict should be for the plaintiff. On the other hand, if any of those propositions have not been proved, your verdict should be for the defendant.

[6]The Note on Use accompanying WPI 330.33 "Disability Discrimination—Reasonable Accommodation—Burden of Proof" states: "This instruction is designed to be used together with WPI 330.34, Disabilities Discrimination—Reasonable Accommodation—Definition, and WPI 330.35, Disabilities Discrimination—Undue Hardship." 6A WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.33, at 249 (1997). There is an error in the text, however, because WPI 330.35 is "Employer Notice and Employee's Duty to Cooperate," not "Undue Hardship." Presumably, the Note should read "Use with 330.36

We consider jury instructions in their entirety.[7] Instructions are not erroneous if: (1) they permit both parties to argue their theory of the case; (2) they are not misleading; and (3) when read as a whole, they properly inform the trier of fact of the applicable law.[8] We will not reverse an erroneous instruction unless prejudice is shown.[9] Unless the error affects or presumptively affects the outcome of the trial, it is not prejudicial.[10]

Under Washington's Law Against Discrimination (WLAD), it is an unfair practice for any employer "[t]o discharge or bar any person from employment because of . . . any sensory, mental, or physical disability."[11] An employer may not "fail or refuse to make reasonable accommodations to the sensory, mental or physical limitations of employees, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business."[12] This prohibition does not apply, however, "if the particular disability prevents the proper performance of the particular worker involved."[13] The provisions of RCW 49.60 "shall be

---

Undue Hardship" or in the alternative, "Use with 330.35 Employer Notice and Employee's Duty to Cooperate."

The Note on Use for Undue Hardship (WPI 330.36) states, "Use this instruction with WPI 330.34, Disability Discrimination—Reasonable Accommodation—Definition." *Id.* at 254. The Note on Use for Employer Notice and Employee's Duty to Cooperate (WPI 330.35) states: "When applicable, use this instruction with WPI 330.33, Disability Discrimination—Reasonable Accommodation—Burden of Proof." *Id.* at 253.

[7]*Dean v. Municipality of Metro. Seattle-Metro*, 104 Wn.2d 627, 634, 708 P.2d 393 (1985).

[8]*Id.*; *Goodman v. Boeing Co.*, 75 Wn. App. 60, 68, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401 (1995).

[9]*Id.* at 68.

[10]*Id.*

[11]RCW 49.60.180(2).

[12]Former WAC 162-22-080(1), *repealed*, St. Reg. 99-15-025 (Aug. 12, 1999).

[13]RCW 49.60.180(1).

construed liberally for accomplishment of the purposes thereof."[14]

■ Thus, to make a prima facie case of handicap discrimination, Easley had to prove: (1) he has a disability; (2) he can perform the essential functions of the job, with or without reasonable accommodation; and (3) he was not reasonably accommodated.[15]

Sea-Land asserts it never raised the undue hardship defense at trial and that an instruction on the defense was unnecessary. Instead, Sea-Land asserts Easley did not prove that he could properly perform the essential functions of his job, and that therefore, "As an affirmative defense, undue hardship only comes into play where the employee first demonstrates the reasonableness of his requested accommodation."

Contrary to Sea-Land's assertions, undue hardship was an issue at trial. Terry Murphy, Sea-Land's maintenance manager and member of the team responsible for finding reasonable accommodation for mechanics with disabilities, made the decision not to recall Easley back to work. On Sea-Land's direct examination, Murphy testified it would not be "feasible in the workplace" to accommodate Easley's disability. Murphy further testified that "it would be very difficult, if not impossible, to find meaningful work 40 hours a week for [Easley] in the workplace."

In addition, Sea-Land submitted a position statement to the Tacoma Human Rights Commission containing Sea-Land's assertions of undue hardship. This document was introduced at trial. In the statement, Sea-Land denied Easley's allegation that it discriminated against him based on his disability:

> Sea-Land has acted in good faith in this matter and is willing to engage in any reasonable accommodation. However, Mr.

---

[14]RCW 49.60.020.

[15]*Dedman v. Washington Personnel Appeals Bd.*, 98 Wn. App. 471, 478, 989 P.2d 1214 (1999); *Dean*, 104 Wn.2d at 639; *Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 560-61, 829 P.2d 196 (1992).

Easley cannot perform the essential functions of the mechanic position and is seeking to place an undue hardship on Sea-Land.

Sea-Land also stated:

Sea-Land has tried to reasonably accommodate Mr. Easley's disability. However, it appears that Mr. Easley is not interested in reasonable accommodation but is attempting to use his disability to perform only those functions which he likes to perform. This would place an undue hardship on Sea-Land and such accommodation is not required by law.

Sea-Land did not object to the admission of this exhibit.

· This evidence squarely placed before the jury the question of whether the accommodations proposed by Easley would have constituted an undue hardship for Sea-Land. In the absence of any instruction as to the employer's burden of proof, the jury had no guidance as to the relevance of this evidence. A reasonable juror could naturally conclude that an accommodation that is a hardship is not "reasonable." Such a juror has shifted the burden of proof to Easley.

The inquiry into whether a proposed accommodation is reasonable and whether a reasonable accommodation poses an undue hardship cannot be described as clear and distinct. The concepts of "reasonable accommodation" and "undue hardship" derive principally from the federal Rehabilitation Act of 1973.[16] In case law interpreting that act, "[t]he defense of undue hardship is sometimes merged with and treated as part of the question of reasonable accommodation."[17]

Washington case law also demonstrates the close relationship between reasonable accommodation and undue

---

[16]Gerald T. Holtzman et al., *Reasonable Accommodation of the Disabled Worker—A Job for the Man or A Man for the Job?*, 44 BAYLOR L. REV. 279, 281 (1992).

[17]*Id.* at 300.

hardship.[18] In *Phillips v. City of Seattle*, a case involving a claim of disability discrimination based on alcoholism, the Washington Supreme Court characterized this issue as an either/or inquiry:

> It is a jury question whether the employer's actions constituted a reasonable accommodation or whether the employee's requests would have placed an undue burden on the employer. Phillips requested his job be kept open until he completed an inpatient treatment program. The City refused. Whether keeping his job open was an undue burden or a reasonable accommodation was a question for the jury.[19]

The Supreme Court thus described the inquiry as an either/or question—a reasonable accommodation *or* an undue burden. Surely a reasonable juror might conclude likewise—and without instruction to the contrary, would place the burden of proof entirely on the employee.

Sea-Land relies on a Ninth Circuit discussion of *Phillips* in *Sharpe v. American Telephone & Telegraph Co. (AT&T)*.[20] There, AT&T reorganized its sales force and as a result Sharpe, an epileptic, could no longer perform his job.[21] In affirming summary judgment in favor of AT&T, the court noted that the correct focus is whether the accommodation the employer actually provided was reasonable, because the law does not require an employer to offer the employee the

---

[18]We note the Supreme Court's only lengthy discussion of reasonable accommodation involved a person whose condition (transsexualism) did not interfere with her job and, therefore, the inquiry was what accommodation an employer must provide, not whether the accommodation was reasonable for someone physically limited in performing tasks. *Doe v. Boeing Co.*, 121 Wn.2d 8, 20-21, 846 P.2d 531 (1993) (holding that the scope of an employer's duty to reasonably accommodate an employee's abnormal condition is limited to those steps necessary to enable the employee to perform his or her job). The court made no reference to undue hardship.

[19]*Phillips v. City of Seattle*, 111 Wn.2d 903, 911, 766 P.2d 1099 (1989).

[20]*Sharpe v. American Tel. & Tel. Co. (AT&T)*, 66 F.3d 1045, 1047-48 (9th Cir. 1995).

[21]*Id.*

precise accommodation requested.[22] The court went on to explain *Phillips*: "In other words, having refused to accommodate, the employer must show that any reasonable accommodation, including one proposed by the employee, would have imposed an undue burden."[23] Here, because Sea-Land initially attempted to accommodate Easley and then refused to accommodate him further, the *Sharpe* court's reading of *Phillips* favors Easley.

This court also has noted the close relationship between reasonable accommodation and undue hardship. In *Wheeler v. Catholic Archdiocese of Seattle*, we held, "it is for the trier of fact to decide at what point continued attempts to accommodate become an undue burden as opposed to a reasonable requirement."[24] At the same time, the court noted that the undue hardship burden was part of the defendant's rebuttal burden: "Finally, the Archdiocese produced no evidence that it would have been an undue hardship to have made known these vacancies to Wheeler or to have determined in fact she was qualified to fill them."[25] In affirming a directed verdict, the court noted: "Reasonable accommodation would have been a jury question here had the Archdiocese produced evidence that it would have been an undue hardship to inform Wheeler of the vacancies and determine whether she qualified for them, or that it would have been an undue hardship to do so beyond a certain date."[26]

These opinions reflect the contradiction inherent in the notion that an accommodation proved to be "reasonable" can at the same time pose an "undue hardship." That, however, is exactly what the law contemplates. To the average juror, what is an "undue hardship" is *un*reasonable.

---

[22]*Id.* at 1050 (citing *Doe v. Boeing*, 121 Wn.2d 8, 20, 846 P.2d 531, 537 (1993)).

[23]*Id.*

[24]*Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 563, 829 P.2d 196 (1992).

[25]*Id.* at 564.

[26]*Id.*

Thus there is a special need in this area for clear instructions. And the difficulty is compounded by the importance of the shift in the burden of proof. If the jury learns only that the plaintiff must demonstrate reasonableness, the jury hears only half the story.

As indicated, undue hardship was an issue at trial. The jury heard extensive evidence of attempts to accommodate. Sea-Land elicited testimony on the difficulty of accommodating Easley's final work restrictions, and an exhibit was introduced containing Sea-Land's explicit assertions of undue hardship. But the instructions completely failed to mention the employer's burden of proof, thereby failing to provide the jury with any indication of the legal relationship between reasonable accommodation and undue hardship. As a result, we cannot tell whether the jury's verdict represents a finding that Easley failed to prove he could perform the essential functions of the job with a reasonable accommodation, or that Easley failed to prove the accommodation he sought was reasonable because it placed an undue hardship on Sea-Land. If the latter, the jury imposed a burden of proof on Easley that the law imposes on Sea-Land. Our uncertainty is fatal to the verdict. We therefore vacate the judgment and remand for a new trial consistent with this opinion.

The remainder of this opinion has no precedential value and will be filed pursuant to RCW 2.06.040.

KENNEDY, C.J., and COLEMAN, J., concur.

Review denied at 141 Wn.2d 1007 (2000).