[No. 47887-7-I.   Division One.   January 7, 2002.]

THOMAS DAVIS, *Respondent*, v. MICROSOFT CORPORATION, *Appellant*.

*Thomas E. Kelly, Jr.* and *Paul J. Lawrence* (of *Preston, Gates & Ellis, L.L.P.*) (*Donna M. Mezias* of *Preston, Gates & Ellis, L.L.P.*, of counsel), for appellant.

*Randy Barnard* (of *O'Shea Barnard & Martin, P.S.*), for respondent.

BAKER, J. — Thomas Davis sued Microsoft Corporation for disability discrimination after it terminated his employment. He could no longer work the 60- to 80-hour workweek his job required, and he failed to secure an alternate 40-hour per week job he could perform at Microsoft. Davis sued on two different legal theories. The jury returned a general verdict in favor of Davis on one of the two theories. Because Microsoft was entitled to judgment as a matter of law that overtime was an essential function of Davis' job that it need not eliminate, we reverse.

## I

Thomas Davis was a systems engineer for Microsoft Corporation, a unique position that requires high level marketing to major Microsoft customers and an in-depth engineering knowledge of Microsoft products. Davis was responsible for the Gateway and Toshiba accounts. His workload required him to work 60 to 80 hours per week. Every systems engineer in his department worked similar numbers of hours.

After Davis had worked at Microsoft for nine years, he was diagnosed with hepatitis C. His physician advised that he reduce his workweek to 40 regular hours to ease the stress on his body and ensure adequate rest. He advised Microsoft of his condition and work restrictions.

Microsoft immediately instructed Davis to reduce his hours, but did nothing to decrease or modify his work responsibilities. As a consequence, he continued to work 80 hours per week. When Davis again approached Microsoft, he proposed that he drop one of his accounts, which would allow him to work not more than 40 hours per week. Microsoft agreed, while it evaluated whether a permanent accommodation was feasible. Davis did well with only the Toshiba account, but the Gateway account received no attention.

Ultimately, Microsoft concluded that it was unable to accommodate Davis in his position short of hiring additional staff, which it determined was not reasonable. Davis was advised that his only options were to resign or to seek another position at Microsoft. The company suggested that he apply for a postsale technical support position, but Davis expressed reluctance. Later, however, Davis asked Microsoft if the position could accommodate a 40-hour workweek and if that was the only position at Microsoft that could accommodate him. Microsoft responded that it would not determine whether that or any other position could accommodate his restriction until Davis interviewed for the position and was hired.

Davis was listed as an inactive employee and given six months to find a job. A resource specialist forwarded to Davis targeted lists of jobs from the company's databank of open positions. With each list, Davis would respond that some of the jobs appeared not to match his skill set. He would inquire whether any of the other jobs listed could accommodate his restriction. Microsoft took the position that it was not its function to find a job for him, but only to assist in his job search. Davis was to be treated as any other applicant. He was told that if he applied for another position and was selected, Microsoft would then make the requisite inquiries to determine whether the job could accommodate his work restriction.

Davis ultimately attended one interview at the urging of the resource specialist. He learned that the position required 60 to 90 hours of work per week. Davis applied for no other jobs and when six months had expired, he was terminated.

Davis sued for disability discrimination under the Washington Law Against Discrimination (WLAD) on two theories: first, that a workweek in excess of 40 hours was not an essential function of his job; and second, that Microsoft failed to take reasonable steps to identify a different vacant position that he could have performed. The jury returned a general verdict in his favor and awarded $2.3 million in damages. The trial court denied Microsoft's motion for judgment as a matter of law. Microsoft appeals.

## II

■ The Washington Law Against Discrimination prohibits employers from discharging employees with any sensory, mental, or physical handicap unless the particular disability prevents the proper performance of the particular worker involved.[1] To establish a prima facie case of disability discrimination, a plaintiff must show the following:

---

[1] RCW 49.60.180(2); *Easley v. Sea-Land Serv., Inc.*, 99 Wn. App. 459, 467, 994 P.2d 271, *review denied*, 141 Wn.2d 1007 (2000).

(1) The employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job;

(2) The employee was qualified to perform the essential functions of the job with or without reasonable accommodation, or was qualified to fill vacant positions;

(3) The employee gave the employer notice of the disability and its accompanying substantial limitations; and

(4) Upon notice, the employer failed to reasonably accommodate the employee.[2]

Microsoft argues that Davis' evidence failed to establish the second and fourth prongs.

■ ■ Microsoft argues that, as a matter of law, the overtime worked by Davis was an essential function of his job that the company was not required to eliminate. When reviewing an order denying judgment as a matter of law, we apply the same standard as the trial court.[3] Judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say that no substantial evidence or reasonable inference therefrom exists to sustain a verdict for the nonmoving party.[4] Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.[5]

■ ■ An employer's duty to reasonably accommodate a disabled employee does not include elimination of an essential job function.[6] In determining whether a particular function is essential to the performance of a specific job, a fact finder may consider the following criteria:

---

[2] See Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 193, 23 P.3d 440 (2001); Dean v. Mun. of Metro. Seattle, 104 Wn.2d 627, 639, 708 P.2d 393 (1985); Easley, 99 Wn. App. at 468.

[3] Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d 907, 915, 32 P.3d 250 (2001).

[4] Guijosa, 144 Wn.2d at 915.

[5] Guijosa, 144 Wn.2d at 915.

[6] Dedman v. Pers. Appeals Bd., 98 Wn. App. 471, 485, 989 P.2d 1214 (1999).

(1) [T]he employer's judgment as to which functions are essential;

(2) [W]ritten job descriptions;

(3) [T]he amount of time spent on the job performing the function;

(4) [T]he consequences of not requiring the employee to perform the function;

(5) [T]he terms of a collective bargaining agreement;

(6) [T]he work experience of past employees in the job; and

(7) [T]he current work experience of employees in similar jobs.[7]

Because the issue of overtime as an essential function is a matter of first impression in Washington, we look to federal case law for guidance.[8]

■ In *Davis v. Florida Power & Light Co.*,[9] the Eleventh Circuit held that overtime was an essential function of the plaintiff's position as a matter of law despite the job description's silence on the subject, where the parties' collective bargaining agreement explicitly characterized overtime as mandatory and the company demonstrated that the overtime was required to maintain the company's performance policy.[10] In this case, the written job description of the systems engineer likewise omitted any reference to work load or overtime requirements. But the evidence was unrebutted that all systems engineers within the department had consistently worked 60-80 hours per week for years. Davis himself confirmed that.

Moreover, Microsoft demonstrated that the structure of the position does not lend itself to a regular, 40-hour workweek. Systems engineers travel extensively and set up

---

[7] *Dedman*, 98 Wn. App. at 479 (format altered) (physical ability to wrestle inmates to the ground is an essential function of corrections officer position).

[8] *Goodman v. Boeing Co.*, 75 Wn. App. 60, 77, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401 (1995) (because the purposes of the WLAD mirror its federal counterpart, Washington courts look to federal law for guidance).

[9] 205 F.3d 1301 (11th Cir.), *cert. denied*, 531 U.S. 927 (2000).

[10] *Davis*, 205 F.3d at 1305.

computer demonstrations under deadlines. Problems frequently occur during the set-up process, requiring the engineer to work long hours to ensure that the computers are properly functioning in time for the presentations. Reasonable minds could not differ that overtime in the systems engineer position was an essential function of the job that Microsoft was not required to eliminate. Microsoft was entitled to judgment as a matter of law on this issue.

■■ Microsoft next argues that as a matter of law it reasonably accommodated Davis in his search for a vacant position within the company that he could perform. One of the methods by which an employer may reasonably accommodate a disabled employee is by reassigning that employee to a vacant position for which he is qualified.[11] Reasonable accommodation is an interactive process between the employee and the employer.[12] An employee has the duty to advise the employer of his disability and attending limitations.[13] He must also explain his qualifications for potential jobs.[14] The employer then has a duty to take affirmative measures to make known vacant job opportunities to the employee and to determine whether the employee is in fact qualified for those positions.[15] The employee has a corresponding duty to apply for positions for which he might be qualified.[16]

Microsoft contends that it did exactly as the law prescribes. It relies on dictum from *Dean v. Municipality of*

---

[11] *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643-44, 9 P.3d 787 (2000) (employer required to accommodate employee with temporary back injury that prevented her from lifting).

[12] *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995) (employer failed to adequately inquire into the nature and extent of employee's limitations by reason of repetitive stress injury).

[13] *Goodman*, 127 Wn.2d at 408.

[14] *Goodman*, 127 Wn.2d at 408.

[15] *Dean v. Mun. of Metro. Seattle*, 104 Wn.2d 627, 639, 708 P.2d 393 (1985).

[16] *Dean*, 104 Wn.2d at 637-38.

*Metropolitan Seattle*[17] that it need only inform Davis of open positions for which he *might* be qualified, and that Davis then bears the responsibility for applying for and securing a job before Microsoft must then evaluate the position for suitability.[18] We disagree.

The holding of *Dean* requires an employer to take affirmative steps to inform an employee of vacant job opportunities and to determine whether the employee is in fact qualified for those positions.[19] In *Curtis v. Security Bank of Washington*,[20] Division Three of this court made clear that this obligation arises before an employee must apply for a job. In *Curtis*, a disabled employee, displaced because of bank restructuring, failed to apply for vacant positions she could perform. She was unaware that future open positions could not accommodate her standing restriction. The court held that the employee's inaction did not relieve the bank of its duty to reasonably accommodate her.[21] It declared that reasonable accommodation by reassignment requires an employer to (a) perform capabilities testing on open positions, (b) encourage the employee to apply for the vacant positions she can perform, and (c) affirmatively assist her in applying for those positions.[22] It is the employer that stands in the better position to know or efficiently determine whether vacant positions can accommodate an employee's disability.

---

[17] 104 Wn.2d 627, 708 P.2d 393 (1985).

[18] *Dean*, 104 Wn.2d at 637 (it was "the duty of Metro to reasonably accommodate Dean by informing him of job openings for which [the employee] might be qualified.").

[19] *Dean*, 104 Wn.2d at 639.

[20] 69 Wn. App. 12, 847 P.2d 507 (1993) (bank employee with standing limitation not required to apply for open positions when employer had not advised her of what positions she was qualified), cited with approval in *Goodman*, 127 Wn.2d at 408.

[21] *Curtis*, 69 Wn. App. at 19.

[22] *Curtis*, 69 Wn. App. at 19. *See also Doe v. Boeing Co.*, 121 Wn.2d 8, 846 P.2d 531 (1993) (gender dysphoria not a handicap affecting ability to perform job functions—accommodation not required).

In no case has an employee been required to apply for a job without first knowing whether it could accommodate his disability.[23] To adopt such a rule would improperly minimize the employer's role in the accommodation process, and place the primary duty on the employee to shoulder the task of job search and analysis through the interview process. Such a process would result in a greater chance of failure to find a reasonable accommodation, and would place the disabled employee in the same position as any other applicant, severely undermining the purpose of the WLAD to eliminate unlawful discrimination.

In this case, Microsoft refused to perform any functions assessment until after Davis applied for and was hired in another position. This forced him to attempt to discover his own accommodation among hundreds of vacant positions, with no tools with which to do it. This was illustrated by Davis' experience when he applied for the position recommended to him by the Microsoft resource specialist, only to discover that the position required 60 to 90 hours of work per week. The trial court correctly denied Microsoft's motion for judgment as a matter of law on this issue.

Microsoft next contends that jury instructions 8 and 13 erroneously required it to guarantee Davis a job that could accommodate him. A trial court has considerable discretion in how jury instructions will be worded.[24] Jury instructions are not erroneous if they (1) permit each party to argue its theory of the case, (2) are not misleading, and

---

[23] *See, e.g., Molloy v. City of Bellevue*, 71 Wn. App. 382, 859 P.2d 613 (1993) (employee not denied reasonable accommodation when he declined position for which he was qualified); *Dedman v. Pers. Appeals Bd.*, 98 Wn. App. 471, 989 P.2d 1214 (1999) (correctional officer offered demotion because arthritic condition prevented her from being able to wrestle with inmates if required). *See also Staub v. Boeing Co.*, 919 F. Supp. 366 (W.D. Wash. 1996) (Boeing reasonably accommodated Staub when it conducted enormous internal effort, but was ultimately unsuccessful in identifying vacant jobs that could accommodate Staub's physical limitations); *Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045 (9th Cir. 1995) (employer reasonably accommodated epileptic employee who was unable to perform position to which he was transferred when AT&T helped Sharpe search for new positions and eventually offered him his original job back, which he could do).

[24] *Goodman*, 75 Wn. App. at 68.

(3) when read as a whole, properly inform the trier of fact of the applicable law.[25] Jury instruction 8 stated in relevant part:

> On his claim of discrimination, Plaintiff Davis has the burden of proving . . .
>
> . . . .
>
> [T]hat Microsoft failed to take reasonable steps, in light of the corresponding duty of the employee, to determine and make known to him another position which was vacant and for which he was qualified and that could accommodate his disability.

Jury instruction 13 set forth the interactive process of accommodation as follows:

> If a disability is not known to the employer, the employee must give the employer notice of the disability. The employer then has a duty to inquire regarding the nature and extent of the disability. The employee has a duty to cooperate with the employer's efforts by explaining the employee's disability and qualifications. The employer must then take reasonable steps to determine and make known to the employee another position which was vacant and for which he was qualified and that could accommodate his disability. The employee has a corresponding duty to reasonably cooperate with the employer in the search for other suitable work by making the employer aware of his qualifications, by applying for all jobs for which he was qualified and which could reasonably accommodate his disability and by accepting reasonably compensatory work he could perform.

Neither of these instructions required Microsoft to guarantee Davis an alternate position. They only require Microsoft to take reasonable steps to find an open position for which he is qualified. The instructions accurately stated the law.

▬ Finally, Microsoft argues that the case must be remanded for a new trial because the general verdict form did not indicate on which of the two theories of liability Davis prevailed. We agree. Microsoft was entitled to judgment as a matter of law that overtime is an essential function of the systems engineer position. Because the

---

[25] *Goodman*, 75 Wn. App. at 68.

896

general verdict does not permit us to determine upon which claim Davis prevailed, we reverse and remand for a new trial.[26]

Reversed in part. Affirmed in part.

GROSSE and WEBSTER, JJ., concur.

Review granted at 146 Wn.2d 1016 (2002).

---

[26] *See State v. Kinchen*, 92 Wn. App. 442, 963 P.2d 928 (1998).